Robert G. TILTON, an individual, Plaintiff–Appellant,

v.

Gary L. RICHARDSON, Ole Anthony, Harry Guetzlaff, C. Tony Wright, David Burrows, and George A. Otstott, Defendants–Appellees.

No. 92–5154.

United States Court of Appeals, Tenth Circuit.

Sept. 14, 1993.

J.C. Joyce (Sidney G. Dunagan of Gable & Gotwals, Inc. with him on the briefs), of Joyce & Pollard, Tulsa, OK, for plaintiff-appellant.

Joseph R. Farris (Jody R. Nathan and J. David Mustain of Feldman, Hall, Franden, Woodard & Farris, Dana Bowen, Gregory Meier and Gary L. Richardson of Richardson, Meier & Stoops, Tulsa, OK, Vic Feazell of Richardson & Feazell, Austin, TX, Steven W. Vincent, Tulsa, OK, Martin R. Merritt of Ostott & Associates, Michael F. Linz, Dallas, TX, William M. Hinkle, Tulsa, OK, with him on the brief), of Feldman, Hall, Franden, Woodard & Farris, Tulsa, OK, for defendants-appellees.

Before BRORBY, McWILLIAMS, and EBEL, Circuit Judges.

BRORBY, Circuit Judge.

This case is here via interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1988) and concerns whether the district court had jurisdiction to address Mr. Tilton's 42 U.S.C. § 1985(3) (1988) claim.[1] Mr. Tilton, who is a pastor, alleges that the Appellees, motivated solely by religious considerations, conspired to destroy his ministry by slander and libel in violation of his First, Fourteenth, and Fifth Amendment rights. The district court dismissed for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). Mr. Tilton alleges the six Appellees/Defendants were private individuals acting in their individual capacities. None were alleged to be state actors, although as hereinafter discussed, all were alleged to have acted to influence state action. Mr. Tilton appeals; we accept jurisdiction and now affirm.

I

Mr. Tilton is a minister of a "Prosperity Church" located near Dallas, Texas. "Prosperity Churches" are a new and small denomination of churches not accepted by conventional Christianity. Mr. Tilton alleged the Appellees, "motivated by animus and bigotry toward [Mr.] Tilton and his religion," conspired to destroy Mr. Tilton, his Church, and his religious practices by (1) the publication of libelous and slanderous statements; (2) the filing and prosecution of multiple law suits; and (3) the persuasion of state and federal officials to prosecute Mr. Tilton for fraud. He alleges Appellees thereby caused him to lose parishioners, made it more difficult for him to gain parishioners, and caused him to divert his attention to his defense at the expense of his effective ministry. Mr. Tilton claims Appellees' actions have deprived him of "his right to freedom of religion as guaranteed by the First Amendment, [and] his right to pursue his chosen profession as guaranteed by the Fifth and Fourteenth Amendments." He further alleges the unfavorable publicity deprived him of his right to trial by a fair and impartial jury.

The complaint designated three claims for relief: (1) equitable relief barring defendants from the future making of false statements;[2] (2) a claim for relief under 42 U.S.C. § 1985(3); and (3) a pendent claim for libel and slander. The district court dismissed the complaint. It held that to be compensable under § 1985(3) a conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus," *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), and Mr. Tilton's claim stated only

---

1. The district court, although dismissing the complaint, retained jurisdiction and then certified the controlling question as an interlocutory appeal.

2. The district court denied Mr. Tilton's request for a temporary restraining order and preliminary injunction in a separate order.

factual allegations that demonstrate "alleged animus ... economic in nature rather than religious" not prohibited by § 1985(3).

On appeal, Mr. Tilton contends that the district court erred in dismissing for lack of subject matter jurisdiction and that the complaint does state a cause of action under § 1985(3).

## II

■ Mr. Tilton's first contention is that the district court erroneously found it lacked subject matter jurisdiction. The district court held it lacked subject matter jurisdiction after determining that Mr. Tilton had not stated a cause of action under § 1985(3). Mr. Tilton challenges the district court's refusal to exercise jurisdiction by contending the motion should have been determined under Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 56 on the merits. The district court's determination of its jurisdiction is reviewed de novo. *In re Estate of Slade v. United States Postal Serv.,* 952 F.2d 357, 360 (10th Cir.1991); *Downtown Medical Ctr. v. Bowen,* 944 F.2d 756, 762 (10th Cir.1991).

■ In this instance, the question of whether the court had subject matter jurisdiction was intertwined with the merits of the case, and therefore the district court should have ruled on the merits rather than dismiss for lack of jurisdiction. The exception to this rule is that subject matter jurisdiction does not exist if: (1) the alleged claim was clearly immaterial and asserted solely for the purpose of obtaining jurisdiction, or (2) the alleged claim was insubstantial and wholly frivolous. *Bell v. Hood,* 327 U.S. 678, 681–82, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946); *see also In re Redmon v. United States,* 934 F.2d 1151, 1155 (10th Cir.1991); *Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987); *Wilhelm v. Continental Title Co.,* 720 F.2d 1173, 1174 (10th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984). The record reflects the district court viewed the question of whether a cause of action under § 1985(3) had been stated as "not easily resolved" and "a very close issue"; accordingly, the court did not view the claim as immaterial or frivolous, and

the district court improperly found it lacked subject matter jurisdiction. In our de novo review we conclude that Mr. Tilton has not stated a cause of action under § 1985(3) as discussed *infra,* but we also conclude Mr. Tilton's claim was not insubstantial and therefore the district court and this court have jurisdiction and the matter must and will be addressed on the merits under Fed. R.Civ.P. 12(b)(6).

We note that although the district court dismissed on Rule 12(b)(1) grounds, it construed the Rule 12(b)(1) motion as a Rule 12(b)(6) motion challenging the sufficiency of the claim and applied the proper standard in its review. The district court evaluated all well-pleaded facts in the complaint as true, *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1410 (3d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991), and limited its inquiry to whether it was beyond a reasonable doubt that Mr. Tilton could not prove facts entitling him to relief, *Triad Assocs., Inc. v. Chicago Hous. Author.,* 892 F.2d 583, 586 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). Mr. Tilton has objected that the district court evaluated factual submissions outside the complaint and improperly treated the Rule 12(b)(1) motion as one for summary judgment without notice to the litigants. *Nichols v. United States,* 796 F.2d 361, 364 (10th Cir.1986). The record does not support this allegation. The district court made stray references to outside materials, but the basis for the dismissal was plainly Rule 12(b)(6).

## III

The issue on this appeal, therefore, is whether Mr. Tilton has stated a claim under 42 U.S.C. § 1985(3). We review de novo. The pertinent provision of § 1985(3) provides:

> If two or more persons ... conspire ... for the purpose of depriving ... any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws; ... [or] cause to be done, any act in furtherance of the object of such conspiracy ... the party so injured or

deprived may have an action for the recovery of damages....

■ The case law has defined the elements of a claim under this statute. The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Griffin*, 403 U.S. at 102–03, 91 S.Ct. at 1798–99 (1971). The evolving law has clarified these elements. Firstly, a valid claim must, of course, involve a conspiracy. Secondly, however, § 1985(3) does not "apply to all tortious, conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin*, 403 U.S. at 101–02, 91 S.Ct. at 1798. The other "class-based animus" language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias. *United Bhd. of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 837, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983). In fact, the Supreme Court has held that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause." *Id.* at 836, 103 S.Ct. at 3360. Thirdly, and most importantly for this appeal, § 1985(3) covers only conspiracies "aimed at interfering with rights that are protected against private, as well as official, encroachment." *Id.* at 833, 103 S.Ct. at 3359. This last requirement was affirmed in the Supreme Court's most recent § 1985(3) case, *Bray v. Alexandria Women's Health Clinic*, — U.S. ——, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). In that case, the Court made explicit that:

In *Carpenters*, we rejected a claim that an alleged private conspiracy to infringe First Amendment rights violated § 1985(3). The statute does not apply, we said, to private conspiracies that are "aimed at a right that is by definition a right only against state interference," but applies only to such conspiracies as are "aimed at interfering with rights ... protected against private, as well as official, encroachment." 463 U.S. at 833 [103 S.Ct. at 3359]. There are few such rights (we have hitherto recognized only the Thirteenth Amendment right to be free from involuntary servitude, *United States v. Kozminski*, 487 U.S. 931 [108 S.Ct. 2751, 101 L.Ed.2d 788] (1988), and, in the same Thirteenth Amendment context, the right of interstate travel, *see United States v. Guest*, [383 U.S. 745], 759 n. 17 [86 S.Ct. 1170, 1179 n. 17, 16 L.Ed.2d 239] [(1966)])....

*Bray*, — U.S. at ——, 113 S.Ct. at 764. It is thus plain that § 1985(3) applies to private conspiracies only in the event that the right aimed at by the conspiracy is one protected against both public and private interference. In short, to state a claim under 42 U.S.C. § 1985(3) for a non-racially motivated private conspiracy, if indeed such a claim can be stated, it is necessary to plead, *inter alia*:

1. that the conspiracy is motivated by a class-based invidiously discriminatory animus; and

2. that the conspiracy is aimed at interfering with rights that by definition are protected against private, as well as official, encroachment.

### IV

■ Mr. Tilton has failed to state a cause of action under § 1985(3). Mr. Tilton has alleged Appellees aimed at interfering with his right to freedom of religion in violation of the First Amendment, his right to pursue his chosen profession as guaranteed by the Fifth and Fourteenth Amendments, and his right to a fair and impartial jury. These rights are not protected against private infringement. There are few rights protected against private, as well as official, encroachment. The Supreme Court has recognized only "the Thirteenth Amendment right to be free from involuntary servitude, and, in the same Thirteenth Amendment context, the right of interstate travel." *Bray*, — U.S. at ——, 113 S.Ct. at 763 (citing *Kozminski*, 487 U.S. at 942, 108 S.Ct. at 2759, and *Guest*, 383 U.S. at 759 n. 17, 86 S.Ct. at 1179 n. 17).

The right of free speech is not such a right. *Bray,* — U.S. at —, 113 S.Ct. at 763.

■ The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The guarantees of the First Amendment run only against the federal government. Of course, by incorporation into the due process clause of the Fourteenth Amendment, these guarantees also run against the State, *Edwards v. South Carolina,* 372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed.2d 697 (1963), but this does not make the First Amendment a protection against Appellees' private conspiracy. Mr. Tilton's Fifth and Fourteenth Amendment claims likewise fail as these Amendments do not erect a shield against merely private conduct however discriminating or wrongful. *See Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

Mr. Tilton seeks to avoid the aforementioned reasoning by claiming that the aim of the private conspiracy was to influence the conduct of the State, and that this influence if proven is sufficient State involvement to constitute a claim under the First Amendment and therefore § 1985(3). His assertion is based on language in *Carpenters* which states that: "an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the state is involved in the conspiracy or *that the aim of the conspiracy is to influence the activity of the state.*" *Carpenters,* 463 U.S. at 830, 103 S.Ct. at 3357 (emphasis added). Mr. Tilton's complaint alleges the private conspiracy aimed at influencing State conduct; he therefore contends that he has stated a valid cause of action under § 1985(3).

■ This argument is without merit. *Bray* explicitly held § 1985(3) is not applicable to private conspiracies that aim at rights that by definition only shield against State interference. It is therefore irrelevant whether the aim of the private conspiracy was to influence State activity. Mr. Tilton makes no allegation that the conspiracy was anything but wholly private. The majority/dissent dialogue in *Bray* clarified this issue. The dissent, in discussing the hindrance clause of § 1985(3), adopted the view that a private conspiracy aimed at interfering with public conduct is sufficient State involvement to constitute an infringement of a right protected only against State encroachment (in that instance the right of a woman to choose to end her pregnancy) and gives rise to a claim under § 1985(3). *Bray,* — U.S. at —, 113 S.Ct. at 796. The dissent's view was premised not on a finding that a public official was involved in the conspiracy, but rather on the conclusion that the alleged interference with State officials was State involvement. The dissent cited the same passage from *Carpenters* as Mr. Tilton. *Bray,* — U.S. at —, 113 S.Ct. at 796 (Stevens, J., dissenting) (citing *Carpenters,* 463 U.S. at 830, 103 S.Ct. at 3357). The majority, in response, denied that *Carpenters* supported this proposition and stated instead that § 1985(3) "does not cover private conspiracies aimed at rights protected only against State encroachment." *Bray,* — U.S. at —, 113 S.Ct. at 766. Although the majority did not reach the precise issue raised by the dissent, it rejected Mr. Tilton's reading of *Carpenters.*

Mr. Tilton also relies on *Taylor v. Gilmartin,* 686 F.2d 1346 (10th Cir.1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994, 463 U.S. 1229, 103 S.Ct. 3570, 77 L.Ed.2d 1411 (1983). This citation is of no avail. *Taylor, inter alia,* involved the question of whether religious groups are a protected class under § 1985(3). *Taylor* was decided in 1982, nearly one year prior to *Carpenters,* and well before *Bray. Carpenters* enunciates the principle that § 1985(3) does not apply to private conspiracies unless they interfere with rights that are protected against private, as well as official, encroachment. The issue of whether § 1985(3) covers private conspiracies aimed at rights that are by definition only applicable to public encroachment was not decided in *Taylor,* and to the extent it might have been, *see, e.g., Taylor,* 686 F.2d at 1360 ("state unwittingly deprived him of [his] rights"), *Carpenters* and *Bray* have effected a change in this evolving area of the law.

Mr. Tilton asserts it was error for the district court to deny him permission to amend his complaint. He attached a copy of

his proposed amended complaint to this motion, and it too fails to allege or demonstrate that the rights at issue are protected against both private and public encroachment. In substance, Mr. Tilton alleges that a self-appointed religious overseer violated his First Amendment rights by interfering with his ministry; and that an individual liar violated his Fifth and Fourteenth Amendment rights by spreading lies and instigating unfounded lawsuits. The claim fails as Mr. Tilton has identified no right protected against private encroachment that has been the object of the alleged conspiracy.

Mr. Tilton has addressed numerous arguments challenging the reasoning of the district court's order. The reasoning may indeed have been somewhat off-the-mark, but such errors were immaterial given that we review the sufficiency of the complaint de novo. We decline to address the other contentions of the parties as they are immaterial to the outcome of this appeal.

The dismissal of the complaint on the basis of Fed.R.Civ.P. 12(b)(6) is **AFFIRMED.**