78 F.3d 597
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Roberto A. RAMIREZ, Stacia Ramirez, Stephanie Ramirez, and
Bobby Ramirez, Plaintiffs-Appellants,
v.
The CITY OF WICHITA; Officer Mcculloch, Badge No. 1467;
Officer Barnes, Badge No. 1443; Lieutenant Haynes, Badge
No. 913; Officer Bob Anderson; Officer Dale E. Coffman;
Lieutenant Lee B. Harp; Officer William A. Riddle; Officer
Eric Malone; Officer Ronald S. Trollope; Officer Terry D.
Morrow; and The Wichita Police Department, Defendants-Appellees.
 No. 95-3148.
 United States Court of Appeals, Tenth Circuit.
 March 6, 1996.
 ORDER AND JUDGMENT[1]
 
 1
 Before PORFILIO, Circuit Judge; HOLLOWAY, Senior Circuit Judge; and HOLMES, District Judge.[2]
 
 
 2
 Roberto A. Ramirez, his wife, and his two minor children brought this civil rights action pursuant to 42 U.S.C.1981, 1983, 1985, and 1986 and Kansas state law against the City of Wichita, the Wichita Police Department (WPD), and ten Wichita police officers. The plaintiffs contended their civil rights were violated when Wichita police twice mistakenly arrested Mr. Ramirez after confusing him with a person wanted in Texas on a murder warrant. The district court granted summary judgment for all the defendants. We affirm on all issues except the district court's conclusion the individual officers were entitled to qualified immunity regarding the second arrest.
 
 
 3
 The confusion between plaintiff, Roberto Ramirez, and the Texas fugitive, Pedro Ramirez, arose when plaintiff pawned a firearm with a Wichita pawnbroker. As required by the City's ordinance, the broker forwarded information on the pawn, including Mr. Ramirez' physical description and date of birth, to the Wichita police, who, in turn, attempted to match that information to data on the National Crime Information Center computer.
 
 
 4
 The search resulted in a match between Roberto and Pedro Ramirez. Significantly, their birth dates, weight, and physical description were identical. Only their given names and height, which indicated a difference of one inch, did not coincide exactly. The officer who discovered the match forwarded the information for investigation.
 
 
 5
 On August 26, 1991, during the third shift, Lt. Darrell Haynes sent two officers to the Ramirez home to determine whether Mr. Ramirez was the wanted fugitive. Arriving at approximately 3:00 a.m., the officers learned Mr. Ramirez had previously been questioned about the same murder several years before and knew about the confusion. After comparing a teletype photograph of Pedro Ramirez with Mr. Ramirez' present appearance and old photographs of him, one of the officers requested assistance from Lt. Haynes.
 
 
 6
 When Lt. Haynes arrived at the scene, he unsuccessfully attempted to obtain additional information about Pedro Ramirez from Texas authorities. Unable to confirm Mr. Ramirez was the fugitive, Lt. Haynes ordered his release. Prior to leaving, Lt. Haynes gave Mr. Ramirez a document prepared by Haynes stating Mr. Ramirez had been "checked out about the homicide case." Lt. Haynes and the two officers then left at approximately 5:00 a.m.
 
 
 7
 Two hours later, Lt. Lee B. Harp arrived for work on the first shift and on his desk found the information concerning Roberto Ramirez and the outstanding warrant for Pedro Ramirez. He passed the information on to the first shift officers under his command.
 
 
 8
 Soon thereafter, five first shift officers went to Mr. Ramirez' home, arriving at 7:43 a.m. According to Mr. Ramirez, when he came to the door, two officers handcuffed him and took him outside. The other officers then conducted a search of the Ramirez home, but they and Mr. Ramirez disagree over the scope of that search. That disagreement remains unresolved.
 
 
 9
 Mr. Ramirez informed the officers about the encounter he had less than three hours before, prompting the officers at the scene to contact Lt. Harp, who informed them the Dallas County Sheriff's Office had provided fingerprints of Pedro Ramirez to the WPD. With Mr. Ramirez' consent, his fingerprints were taken and compared to those of the Texas suspect. The comparison established plaintiff was not Pedro Ramirez, and the officers released him. This suit ensued.
 
 
 10
 Initially, Mr. Ramirez argues two theories why the district court erred in granting summary judgment on qualified immunity grounds to the individual police officers. He contends police violated a clearly established constitutional right, and he asserts genuine issues of material fact remain in controversy precluding summary judgment. We conclude the district court properly granted the individual WPD officers qualified immunity regarding the first arrest, but agree with Mr. Ramirez factual issues remain in controversy precluding summary judgment in connection with the second arrest.
 
 
 11
 We review both the district court's qualified immunity decision and its conclusion no genuine issues of material fact existed precluding summary judgment de novo. Wilson v. Meeks, 52 F.3d 1547, 1551 (10th Cir.1995); Cummins v. Campbell, 44 F.3d 847, 850 (10th Cir.1994). When a defendant raises the affirmative defense of qualified immunity, the plaintiff assumes the burden of showing the defendant's actions violated either a constitutional or statutory right, and the right alleged to have been violated was clearly established at the time of the defendant's conduct. Albright v. Rodriguez, 51 F.3d 1531, 1534-35 (10th Cir.1995). If a plaintiff satisfies this two-part test, the burden shifts to the defendant to show there are no genuine issues of material fact at issue precluding summary judgment. Id. at 1535. The traditional summary judgment standard applies. The evidence is considered in the light most favorable to the non-moving party, Applied Genetics Int'l v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990), including drawing all reasonable inferences from the available underlying facts. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Summary judgment is appropriate only if there is no genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).
 
 
 12
 The Fourth Amendment prohibits the police from arresting someone without either a warrant or probable cause. Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir.1995) (citing Tennessee v. Garner, 471 U.S. 1, 6-8 (1985)).[3] "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Id. (quoting Jones v. City & County of Denver, Colo., 854 F.2d 1206, 1210 (10th Cir.1988)). "Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion, and to develop probable cause for an arrest." Albright, 51 F.3d at 1536 (citations omitted).
 
 
 13
 The description of Pedro Ramirez contained in the NCIC printout and the description of Mr. Ramirez on the pawnshop form are strikingly similar. Both share surnames, hair color, eye color, weight, age, and most particularly identical dates of birth. The only differences are relatively insignificant. Under these circumstances, we have no difficulty concluding the police possessed probable cause to arrest Mr. Ramirez, and therefore did not violate his constitutional rights during the first episode.
 
 
 14
 In an attempt to avoid this conclusion, Mr. Ramirez challenges the reliability of the NCIC computer record on hearsay grounds. Obviously, because the contents of the computer record were not offered to establish the truth of the statements it contained, the record is not inadmissible hearsay by definition. Fed.R.Evid. 801(c).
 
 
 15
 Mr. Ramirez also argues the police cannot rely on an NCIC printout to establish probable cause. Again, we disagree. We have not explicitly answered this precise inquiry, although in dicta in United States v. Hines, 564 F.2d 925 (10th Cir.1977), cert. denied, 98 S.Ct. 748 (1978), we commented, "information received from the NCIC computer bank has been routinely accepted in establishing probable cause for a valid arrest." Id. at 927. However, other circuits who have addressed this issue have squarely held an NCIC computer printout is sufficient to establish probable cause for an arrest. See, e.g., Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 280 (5th Cir.1992); Lowrance v. Pflueger, 878 F.2d 1014, 1019-20 (7th Cir.1989); United States v. Towne, 870 F.2d 880, 884-85 (2d Cir.), cert. denied, 490 U.S. 1101 (1989); Capone v. Marinelli, 868 F.2d 102, 105-06 (3d Cir.1989). We conclude the NCIC information was sufficient to provide probable cause to arrest Mr. Ramirez. We hold the individual police officers were entitled to qualified immunity relating to Mr. Ramirez' first arrest.
 
 
 16
 In contrast, the factual predicate concerning the second arrest remains unclear, thus precluding summary judgment. The validity of the second arrest hinges on the extent of the knowledge of Lt. Harp and the officers of the first shift concerning the third shift's prior arrest and release of Mr. Ramirez. If the first shift knew of the third shift's prior activities, the similarities between Mr. Ramirez and the suspect are insufficient to establish probable cause a second time without any additional information suggesting Mr. Ramirez and Pedro Ramirez were the same individual. However, if the first shift independently acted on the NCIC and pawnshop information without any knowledge of the third shift's activities, qualified immunity would be appropriate.
 
 
 17
 Unfortunately, the underdeveloped factual record does not enable us to determine whether Lt. Harp and the first shift knew of Mr. Ramirez' prior arrest. The majority of the summary judgment record on appeal consists of affidavits and police reports. A survey of the available evidence demonstrates how the extent of the first shift's knowledge of the third shift's activities remains an open question. Some of the affidavits and police reports submitted in support of summary judgment are contradictory, leaving the ultimate facts in doubt.[4] Because reasonable inferences could be drawn from this evidence that would negate a finding of qualified immunity, we conclude the district court's judgment on this issue was premature.
 
 
 18
 The district court must reexamine this issue on remand; although, trial on the question may not be required. If there is available sufficient uncontroverted evidence to clear up what now appears to be conflicting statements of the participants, summary judgment may yet be appropriate.
 
 
 19
 Mr. Ramirez also argues a genuine issue of material fact exists concerning the scope of the WPD's search of his mobile home after the second arrest. The search of Mr. Ramirez' mobile home potentially may be justified based on either the incident to arrest or protective sweep exceptions to the warrant requirement. United States v. Parra, 2 F.3d 1058, 1066-67 (10th Cir.), cert. denied, 114 S.Ct. 639 (1993); United States v. Hogan, 38 F.3d 1148, 1149-50 (10th Cir.1994), cert. denied, 115 S.Ct. 1323 (1995). However, the validity of the search under either exception depends on the acceptability of the underlying arrest. Because of our remand to the district court on this issue, a judgment of the propriety of the search must also await further action by the district court.
 
 
 20
 Next, the plaintiffs argue the district court erred in
 
 
 21
 granting summary judgment for the defendants on their 1985
 
 
 22
 claim.[5] The district court concluded the
 
 
 23
 plaintiffs failed to state a claim. We agree.
 
 
 24
 We review the district court's determination the plaintiffs failed to state a claim under 42 U.S.C.1985 de novo. Tilton v. Richardson, 6 F.3d 683, 685 (10th Cir.1993), cert. denied, 114 S.Ct. 925 (1994). The four elements of a claim under this statute are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. Murray v. City of Sapulpa, 45 F.3d 1417, 1423 (10th Cir.1995); Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).
 
 
 25
 First, the plaintiffs have failed to establish the existence of a conspiracy. An allegation of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action. Crabtree By & Through Crabtree v. Muchmore, 904 F.2d 1475, 1476 (10th Cir.1990); Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir.1983). A plaintiff may establish a conspiracy by either direct or circumstantial evidence of a meeting of the minds or an agreement among the defendants. Such evidence is completely lacking here. Mr. Ramirez alleges the WPD intentionally harassed him by their twice arresting him based on his Hispanic ancestry. However, his bare allegations do not rise to the level of a conspiracy. Neither a conspiratorial agreement nor concerted action exists even if Mr. Ramirez can conclusively demonstrate the first shift officers knew about the third shift's prior arrest.
 
 
 26
 Second, Mr. Ramirez has failed to demonstrate any deprivation of his equal protection or equal privileges and immunities. A plaintiff must establish a class-based or racially discriminatory motive behind the conspiratorial activities to establish this element. "Section 1985(3) does not apply to all tortious, conspiratorial interferences with the rights of others,' but rather, only to conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus.' " Tilton, 6 F.3d at 686 (quoting Griffin, 403 U.S. at 101-02). Mr. Ramirez has failed to prove the actions of the police officers were based on his race.
 
 
 27
 Contrary to the assertion of plaintiffs' counsel, the fact Pedro Ramirez and Mr. Ramirez were Hispanic and their physical descriptions share common physical attributes of many Hispanic males does not equal racial discrimination. Mr. Ramirez has offered no evidence the officers intended to deprive him of his civil rights because of his Hispanic ancestry.
 
 
 28
 Third, Mr. Ramirez has failed to demonstrate the police conspiracy was aimed at interfering "with rights constitutionally protected against private, as well as official, encroachment." United Bhd. of Carpenters & Joiners of Am. v. Scott, 463 U.S. 825, 833 (1983). "[Section] 1985(3) applies to private conspiracies only in the event that the right aimed at by the conspiracy is one protected against both public and private interference." Tilton, 6 F.3d at 686 (citing Bray v. Alexandria Women's Health Clinic, 113 S.Ct. 753, 764 (1993)). Mr. Ramirez' allegations of Fourth Amendment violations do not fall within this category because the Fourth Amendment protects exclusively against governmental intrusions, not private conduct. We hold the plaintiffs have failed to state a claim under 42 U.S.C.1985.
 
 
 29
 Additionally, Mr. Ramirez argues the district court erred in dismissing his claims against the City of Wichita. He contends he demonstrated deliberate indifference to his constitutional rights on the part of the City and the City's ordinance requiring pawnshops to provide information to the police is unconstitutional.
 
 
 30
 For the reasons stated by the district court, we agree with its conclusion Mr. Ramirez has failed to demonstrate any constitutional violation resulted from a policy or custom attributable to the City. We also conclude Mr. Ramirez lacks standing to challenge the City's pawnshop information disclosure policy.
 
 
 31
 In United States v. Marchant, 55 F.3d 509 (10th Cir.), cert. denied, 116 S.Ct. 260 (1995), we held no reasonable expectation of privacy existed in the information contained on the Bureau of Alcohol, Tobacco, and Firearms (ATF) Form 4473 required for all firearms transactions. Id. at 517. We find no difference between the facts of this case and Marchant. The pawnshop form involved here contains virtually identical information as the ATF Form 4473 at issue there. Mr. Ramirez lacks Fourth Amendment standing to challenge the propriety of the City's ordinance.
 
 
 32
 Finally, plaintiffs challenge the district court's conclusion the other three Ramirez family members had no standing because viable 1983 claims must be based on the violation of one's own rights, not the rights of someone else. We agree.
 
 
 33
 "When we say standing, we mean that the 1983 civil rights action is a personal suit. It does not accrue to a relative, even the father of the deceased." Dohaish v. Tooley, 670 F.2d 934, 936 (10th Cir.), cert. denied, 459 U.S. 826 (1982). See also Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir.1990). The district court properly concluded the Ramirez family has failed to demonstrate the officers intended to violate their individual rights by arresting Mr. Ramirez. Their allegations of fright, psychological and emotional injuries arising from Mr. Ramirez' arrest are insufficient to provide them standing because they have failed to allege any violations of their individual constitutional rights.
 
 
 34
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 
 HOLLOWAY, Circuit Judge, concurring:
 
 35
 I concur fully in the court's opinion and write separately only to clarify my reasoning which, I believe, is not at odds with the court's. Plaintiffs rely heavily on Payton v. New York, 445 U.S. 573 (1980), in contending that Roberto Ramirez's rights were violated by these arrests. Payton, of course, holds that a warrantless arrest for a felony may not be made in the home, absent exigent circumstances, even when probable cause clearly exists. In their briefs, defendants have not disputed the fact that Payton is pertinent.
 
 
 36
 To rebut plaintiffs' reliance on Payton, defendants instead rely almost solely on the officers' reasonable belief that a warrant had issued in Texas, the continuing validity of which had been confirmed to the extent practical by telephone contact with the issuing authority. Defendants contend that granting qualified immunity to the officers under these circumstances is consistent with pronouncements of the Supreme Court in Whiteley v. Warden, 401 U.S. 560, 568 (1971); and United States v. Hensley, 469 U.S. 221 (1985). In particular I write separately to make expressly clear my agreement with this contention in the analysis of the first arrest.
 
 
 37
 I will summarize my views very briefly. In Whiteley, the Court considered the validity of an arrest made by officers who had been informed by radio of the existence of a warrant from another county. The Court held the arrest invalid, not because the officer making the arrest acted improperly, but because no probable cause had been shown for the issuance of the warrant. As to the arresting officer, the Court made this observation which is very pertinent here:
 
 
 38
 We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.
 
 
 39
 401 U.S. at 568.
 
 
 40
 The Court's holding that, in the resulting criminal prosecution, the validity of the arrest is dependent on the proper establishment of probable cause for the issuance of the warrant in no way diminishes the import of the quoted reasoning for this civil proceeding. The officers did not violate Ramirez's rights by effecting an arrest in the home, assuming arguendo that this was an arrest in the home, because they reasonably believed that a valid warrant existed.
 
 
 41
 In this regard, I also want to make clear my analysis that the defendants' failure to produce the Texas warrant in this civil case, ante at note 1, does not undermine the lawfulness of the officers' actions. Instead, the reasonableness of the officers' conduct is appropriately analyzed in the context of the information they possessed, which included the reasonable belief in the existence of the warrant and the confirmation by telephone that the warrant was still outstanding. Thus, I read the court's opinion as fully consistent with the Whiteley dictum I have quoted.
 
 
 42
 Accordingly, with these explanations of my thinking, I agree with the majority's opinion and with the disposition it makes.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 Honorable Sven Erik Holmes, United States District Court Judge for the Northern District of Oklahoma, sitting by designation
 
 
 [3]
 In their brief, the defendants argued Mr. Ramirez was arrested pursuant to a valid warrant. However, during oral argument it became clear the Dallas, Texas warrant was not produced before the district court. Therefore, the question becomes whether the information the police possessed from the NCIC computer supplied adequate probable cause for Mr. Ramirez' arrest
 
 
 [4]
 For example, the police report, prepared by homicide officer Dale E. Coffman, regarding the second arrest by the first shift on the morning of August 26, 1991, states:
 We were under the impression at that time from information received from Lt. Harp that 3rd shift had been out there but could not confirm the warrant, but it had since been confirmed through fingerprint analysis sent by Dallas Police Department that Robert[o] Ramirez was Pedro Ramirez.
 (emphasis added). By contrast, the affidavit prepared by the same officer and submitted in support of Defendants' Motion for Summary Judgment states in applicable part as follows:
 At the time when first shift officers arrived at the residence of Roberto Ramirez we believed that he matched the description of the individual wanted on the Dallas, Texas murder warrant and we took reasonable precautions in dealing with this situation. I believe that the only way to positively determine whether Mr. Ramirez was the wanted suspect was the fingerprint comparison which could not have been done until the lab personnel came on duty on 8:00 o'clock a.m.
 (emphasis added). These two statements alone, made by the same individual, create a material issue of fact as to what the officers on the first shift knew at the time of the second arrest.
 
 
 [5]
 The second cause of action of the plaintiff's amended complaint alleged violations of 42 U.S.C.1983, 1985 and 1986. The plaintiff's third cause of action alleged violations of 42 U.S.C.1981, 1983, 1985, and 1986. On appeal, plaintiffs only raise the district court's disposition of their 1985 claim. As a result, they have abandoned their claims under the other civil rights laws