**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALIREZA VAZIRABADI,

    Plaintiff - Appellant,

v.

DENVER HEALTH AND HOSPITAL
AUTHORITY, as Employer; JEREMY
LEE, in his individual capacity;
ELIZABETH FINGADO, in her individual
capacity; MARK GENKINGER, in his
individual capacity; THEODORE
POKRYWKA, in his individual capacity;
DOES ENTITIES 1 THROUGH 10, whose
true names are unknown; JOHN AND
JANE DOES, 1 through 10,

    Defendants - Appellees.

------------------------------

SHL US INC.,

    Interested Party - Appellee.

No. 18-1411
(D.C. No. 1:17-CV-01737-RBJ)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **MATHESON**, and **MORITZ**, Circuit Judges.
_____

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

Alireza Vazirabadi, appearing pro se,[1] appeals from the district court's grant of summary judgment to defendants.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

Vazirabadi applied for two positions in the Lean Department with Denver Health in July 2016.  Denver Health sought candidates with strong project management skills, familiarity facilitating groups and motivating people to adapt to new processes, and experience dealing with interpersonal relationships and conflicts. At the time he applied for the positions, Vazirabadi had been working as an Uber driver for nearly three years, had a bachelor's degree in industrial engineering, and did not have any experience in the healthcare field.

Appellant applied for the positions online.  The application form included a request that the applicant list all fluent languages.  Vazirabadi entered "Farsi/Persian."  Denver Health emailed Vazirabadi an online competency evaluation.  SHL US Inc. ("SHL") hosted and administered the test.  In connection with the test, SHL asked a series of demographic questions.[2]  One such question

_____

[1] Because Vazirabadi appears pro se, we construe his filings liberally, but do not serve as his advocate.  Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005).

[2] SHL asserts that the questions were entirely voluntary and enabled SHL to ensure that its tests did not discriminate against any protected group.

2

asked "[a]re you 40 years of age or older?" Vazirabadi answered by clicking the button next to the word yes.[3]

SHL provided the substantive test results to Denver Health as a percentile score with a recommendation. Vazirabadi scored in the fifth percentile for deductive reasoning and in the twenty-fifth percentile overall; he was "[n]ot [r]ecommended" for hiring. SHL did <u>not</u> provide Denver Health with responses to the demographic questions on a per-applicant basis. Instead, SHL made them available in batches that contained aggregate information related to multiple applicants. And only Denver Health's director of recruitment, Mark Genkinger, had access to the batches. He did not review any batch relating to July 2016 applications in the relevant timeframe.

Vazirabadi nonetheless claims SHL communicated his over-forty status to Denver Health via metadata transmitted with his score report. To support this allegation, Vazirabadi trumpets what appears to be a screenshot from a document review tool that shows the text "'40" next to his last name in two locations. On its face, the captured image purports to "Show Only Hidden Text." Vazirabadi did not authenticate the screenshot,[4] and we cannot discern its origins from the record. The

_____

[3] The parties dispute whether Vazirabadi saw an option to click a button next to the text labeled "[p]refer not to answer." Our disposition of this case does not require resolution of the dispute.

[4] He did make a sworn statement that the screenshot is "true and correct." But that naked remark says nothing about the source of the document shown to be under review in the screenshot, who performed the review, what program generated the image, etc.

3

record does not contain evidence that any of the defendants ever saw a "'40" designation beside Vazirabadi's name.

Elizabeth Fingado ran Denver Health's Lean Department. Fingado tasked Jeremy Lee with reviewing 112 applications for the two open positions and selecting candidates. Because neither position required foreign language skills, Lee did not review responses to the language-related section of the applications. Lee selected Vazirabadi and fifteen other candidates to interview by telephone for both open positions. A panel of existing employees interviewed each of the candidates using a prepared list of questions. The panel members scored each candidate in several work-related areas. Denver Health selected the three candidates with the highest scores related to each open position for in-person interviews. Vazirabadi was not selected for an in-person interview, and Denver Health ultimately hired others for the two positions.

Vazirabadi then sued Denver Health and several of its employees for employment discrimination, alleging they discriminated against him based on his age and national origin. The district court granted summary judgment and dismissed his case with prejudice. Vazirabadi appealed.

## II

### A

Vazirabadi appeals the district court's decision not to recuse from this case. He filed a motion seeking recusal of the district court judge in accordance with 28 U.S.C. §§ 144 and 455(a). Section 144 provides that if a judge has a "personal bias

or prejudice" for or against one of the parties, the judge should be recused. Under § 144, the court strictly construes the affidavits filed in support of recusal against the affiant, and the moving party has a substantial burden to demonstrate that the judge is not impartial. Weatherhead v. Globe Int'l, Inc., 832 F.2d 1226, 1227 (10th Cir. 1987). Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Under § 455, the "test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987) (per curiam). "We review the denial of a motion for recusal for an abuse of discretion." Cauthon v. Rogers, 116 F.3d 1334, 1336 (10th Cir. 1997).

The district court carefully considered each of Vazirabadi's arguments, and concluded that the facts did not show "bias, prejudice, or a basis on which a reasonable person would question the Court's impartiality." We agree.

On appeal, Vazirabadi does not dispute the substance of the district court's findings. Instead, he asserts the district court erred because its explanation omitted an explicit reference to § 144, citing only § 455(a). But § 455(b)(1) "entirely duplicate[s] the grounds of recusal set forth in § 144 ('bias or prejudice')." Liteky v. United States, 510 U.S. 540, 548 (1994). Section 455(a), in turn, "is a 'catch-all' provision that is broader than the specific grounds for disqualification set forth in § 455(b)." United States v. Young, 45 F.3d 1405, 1415 (10th Cir. 1995). "Inasmuch as the grounds for disqualification set out in Section 144 'personal bias or prejudice either against (a party) or in favor of any adverse party' are included in Section 455,

5

we may consider both sections together." United States v. Gigax, 605 F.2d 507, 512 (10th Cir. 1979) (quotation and citation omitted), overruled in part on other grounds by United States v. Lang, 364 F.3d 1210 (10th Cir. 2004). The district court therefore did not err by citing only § 455.

**B**

Vazirabadi next challenges the district court's quashing a subpoena he issued to defendants' expert witness Forensic Pursuit. In September 2017, defense counsel retained Forensic Pursuit as a consulting expert in this action. On March 23, 2018, Vazirabadi contacted Forensic Pursuit to engage the firm as his expert in this action. Forensic Pursuit declined, citing its work for defendants. On April 4, 2018, Vazirabadi issued a subpoena to Forensic Pursuit seeking production of documents related to Denver Health. Defendants moved to quash the subpoena under Federal Rule of Civil Procedure 26(b)(4)(D)(ii), and Vazirabadi filed a competing motion to compel.

Rule 26(b)(4)(D)(ii) permits discovery of a consulting expert who is not expected to testify at trial only on a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." The district court ruled in favor of defendants, finding that they hired Forensic Pursuit as a consulting expert and Vazirabadi did not make the necessary showing of exceptional circumstances. "We review pretrial discovery rulings for abuse of discretion. A trial court abuses its discretion when it issues a ruling that is arbitrary, capricious, whimsical, or manifestly unreasonable." King v.

6

PA Consulting Grp., Inc., 485 F.3d 577, 590 (10th Cir. 2007) (quotation and citation omitted).

On appeal, Vazirabadi argues that there was insufficient evidentiary support for the conclusion that defense counsel retained Forensic Pursuit on defendants' behalf. This evidence included representations of defense counsel and an affidavit submitted by Forensic Pursuit's CEO, Robert Keslo, in which Keslo states that "[o]n September 19, 2017, a representative of [defense counsel] contacted Forensic Pursuit and asked the firm to perform consulting services on behalf of the [d]efendants in the present case." Vazirabadi's attacks on the evidence do not hold water.[5] We therefore conclude that the district court did not abuse its discretion by quashing the subpoena issued to Forensic Pursuit.

## C

Vazirabadi also challenges the district court's denials of his two motions to amend his once-amended complaint. Under its scheduling order, the district court set November 6, 2017, as the deadline for amendment of the pleadings and June 1, 2018, as the discovery cut-off. On June 7, 2018, Vazirabadi filed a motion to amend his

---

[5] Vazirabadi's argument that Keslo's supporting affidavit should be stricken (because it lacks the phrases "true and correct" and "under penalty of perjury," and contains trivial alleged inconsistencies) fails for the reasons discussed infra. His argument that the affidavit is not based on personal knowledge because it describes actions taken by another person misapprehends the concept that a person can competently testify about the actions they have observed another person take. His remaining arguments deliberately disregard the affidavit's clear statement that defense counsel retained Forensic Pursuit to perform services on defendants' behalf.

7

once-amended complaint to add three defendants and one cause of action. The district court found Vazirabadi did not establish good cause for amending his complaint, and it denied the motion. On August 7, 2018, Vazirabadi filed a second motion to amend his complaint. The district court applied Rule 15(a)(2) and denied this motion because the proposed amendment would be futile and would result in undue prejudice to the defendants.

Rule 15(a)(2) provides that after the initial deadline for amendment has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Id. "The court should freely give leave when justice so requires." Id. But "[a]fter a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n, 771 F.3d 1230, 1240 (10th Cir. 2014). Rule 16(b)(4), in turn, provides that a scheduling order "may be modified only for good cause and with the judge's consent." Id. "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed. If the plaintiff knew of the underlying conduct but simply failed to raise [applicable] claims, however, the claims are barred." Gorsuch, 771 F.3d at 1240 (citation omitted). "We review for abuse of discretion a district court's denial of a motion to amend a complaint after the scheduling order's deadline for amendments has passed." Birch v. Polaris Indus., Inc., 812 F.3d 1238, 1247 (10th Cir. 2015).

8

Vazirabadi's first motion to amend his once-amended complaint did not provide any reasoning as to why the amendment should be allowed. Instead, it contained only conclusory and irrelevant statements. The district court thus properly denied the first motion to amend due to his failure to establish good cause.

Vazirabadi's second motion to amend articulated reasons for allowing the amendment, and the district court evaluated the request under Rule 15(a)(2). District courts may consider a wide range of factors, including undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, and futility. See Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006). The "most important[] factor in deciding a motion to amend the pleadings[] is whether the amendment would prejudice the nonmoving party." Id. at 1207. The district court found the proposed amendment would prejudice defendants. We agree. The district court did not abuse its discretion in denying Vazirabadi's motions to amend.

**D**

Vazirabadi appeals the district court's reliance on affidavits provided by defendants supporting their motion for summary judgment. He claims that because the affidavits state neither that they are "true and correct" nor signed "under the penalty of perjury," the affidavits are void.

An affidavit is "[a] voluntary declaration of facts written down and sworn to by a declarant, [usually] before an officer authorized to administer oaths." Affidavit, Black's Law Dictionary (11th ed. 2019). Each of the affidavits at issue in this case is styled as an "Affidavit of [name]." Each of them contains an introductory sentence

9

in substantially the following form: "I, [name], being of lawful age and first duly sworn upon oath, depose and state that I have personal knowledge and information concerning the following." And each of them states that it was "subscribed and sworn" before a notary public. The defendants' submitted affidavits legally suffice, and the district court properly relied on them.

Vazirabadi's argument that an affidavit must contain the phrases "true and correct" and "under penalty of perjury" misconstrues 28 U.S.C. § 1746. That statute authorizes parties to submit unsworn declarations in lieu of affidavits, provided that the declarations state that they are "true and correct" and are made "under the penalty of perjury," among other things. Id. But § 1746 does not apply to sworn affidavits.

Appellant further claims the district court should have disregarded Lee's affidavit because the notary's stamp indicated that her commission expires on January 17, 2020, whereas the notary's handwritten note indicated that her commission expired on January 17, 2018—before Lee executed the affidavit on August 28, 2018. But regardless whether the notary's commission had expired, Lee swore to the affidavit's contents "upon oath," and the district court properly considered it.

Vazirabadi also presents a new argument on appeal that defendants' affidavits should have been stricken because they contradict attached exhibits. We generally consider arguments not presented to the district court to be forfeited. See Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1127-28 (10th Cir. 2011). "[W]e will entertain forfeited theories on appeal, but we will reverse a district court's judgment on the

10

basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result." Id. at 1128.

"Contradictions found in a witness' testimony are not, in themselves, sufficient to preclude such testimony." Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 973 (10th Cir. 2001). This principle controls in this case, as the alleged inconsistencies concern trivial issues of fact, and the support for the supposed contradictions is speculative. The district court did not commit plain error in relying on the defendants' affidavits.

**E**

Vazirabadi appeals the district court's grant of summary judgment to defendants. Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To avoid summary judgment, a party must produce specific facts showing that there remains a genuine issue for trial . . . ." Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988) (quotation omitted). We review the district court's summary judgment decision de novo, viewing the factual record and making reasonable inferences from it in the light most favorable to the nonmoving party. Bird v. W. Valley City, 832 F.3d 1188, 1199 (10th Cir. 2016).

Appellant alleges Denver Health violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. An employer violates the ADEA if it "fail[s] or refuse[s] to hire . . . any individual . . . because of such individual's age." § 623(a)(1). "[T]he plaintiff retains the burden of persuasion to

11

establish that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009).

A plaintiff may demonstrate age discrimination in violation of the ADEA by providing either direct or circumstantial evidence of discrimination. See Roberts v. Int'l Bus. Machs. Corp., 733 F.3d 1306, 1308-09 (10th Cir. 2013). Direct evidence in this context "is evidence from which the trier of fact may conclude, without inference, that the employment action was undertaken because of the employee's protected status." Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1105 (10th Cir. 2008). If the plaintiff relies on circumstantial evidence, then we review his claim under the burden-shifting framework first described in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Roberts, 733 F.3d at 1309.

The attempt to prove age discrimination in this case rests on an unauthenticated screenshot of a document review tool that supposedly shows hidden metadata that flagged Vazirabadi as an over-forty candidate and on an allegation that SHL transmitted the hidden metadata to Denver Health with Vazirabadi's competency test scores. The district court found that Vazirabadi "failed to put forward any admissible or even arguably credible evidence that creates a triable issue of fact as to whether [Denver Health] knew [] Vazirabadi's age, much less acted on it." We agree.

Because Vazirabadi has no direct evidence to support his age discrimination claim, his case must proceed under the three-step framework of McDonnell Douglas. Under that framework, a plaintiff alleging discrimination in a failure to hire case has

12

the initial burden on summary judgment of producing evidence sufficient for a reasonable jury to conclude the plaintiff "applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (describing McDonnell Douglas framework).

If the plaintiff makes this initial showing, the burden shifts to the defendant to articulate a nondiscriminatory reason for not hiring the plaintiff. Id. If the employer does so, then the burden shifts back to the plaintiff to produce sufficient evidence for a reasonable jury to conclude the defendant's proffered rationale is a pretext for discrimination. See id.; Roberts, 733 F.3d at 1309. "Under our precedents, a plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude they are unworthy of belief." Johnson v. Weld Cty., 594 F.3d 1202, 1211 (10th Cir. 2010) (alteration and quotation omitted). "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Bekkem v. Wilkie, 915 F.3d 1258, 1268 (10th Cir. 2019) (quotation omitted).

Assuming without deciding that Vazirabadi satisfied the initial step in the McDonnell Douglas process, his claim nevertheless fails. Denver Health provided a legitimate, nondiscriminatory reason for not hiring Vazirabadi: other candidates were more qualified and performed better during the interview process. At the time he applied for employment with Denver Health, Vazirabadi had been working as an

13

Uber driver for nearly three years, had a bachelor's degree in industrial engineering, and did not have any experience in healthcare. During his interview, Vazirabadi failed to provide concrete examples that related his experience to the positions. And the candidates ultimately hired had significantly more relevant education and work experience.

Because Denver Health provided a nondiscriminatory reason for hiring other candidates, the burden shifted back to Vazirabadi to produce evidence that Denver Health's proffered rationale was pretext for age discrimination. He provided no such evidence, and therefore the district court properly granted summary judgment in favor of defendants.

Vazirabadi also brought a conspiracy claim under 42 U.S.C. § 1985(3) related to the alleged age discrimination. "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993).

Each of the individual defendants provided evidence that they (1) did not know Vazirabadi's age at the time the relevant hiring decisions were made, (2) did not take his age into account when making a hiring decision, and (3) did not otherwise conspire to discriminate against Vazirabadi. Lee and Fingado submitted evidence that the interview and selection process provided Vazirabadi with a fair and equal opportunity to be hired.

14

Vazirabadi has not pointed to any specific facts that call this evidence into question. His sweeping allegations that defendants destroyed, forged, or altered documents in furtherance of their supposed conspiracy lack evidentiary support. The district court thus properly granted summary judgment in favor of the defendants on the conspiracy claim.[6]

Finally, Vazirabadi brings a claim of national origin discrimination under 42 U.S.C. § 2000e-2(a)(1). Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin." § 2000e-2(a)(1). "To survive summary judgment on a Title VII claim of discrimination based on race, color, religion, sex, or national origin, a plaintiff must present either direct evidence of discrimination or indirect evidence that satisfies the burden-shifting framework of McDonnell Douglas." Bekkem, 915 F.3d at 1267 (citation omitted).

Appellant does not challenge the district court's finding that he "has no direct proof of national origin discrimination." We therefore evaluate his claim of national origin discrimination by applying the McDonnell Douglas framework. But again, even if we assume Vazirabadi has established a prima facie case of discrimination, Denver Health has articulated a nondiscriminatory reason for not hiring Vazirabadi.

---

[6] To the extent his § 1985(3) cause of action also asserted an equal protection claim, we affirm the district court's grant of summary judgment on that claim for substantially the same reasons cited by the district court.

Applying McDonnell Douglas, this shifted the burden back to appellant to prove that Denver Health's rationale was pretext for national origin discrimination. The district court found that Vazirabadi did not make this showing and we agree.

## F

Vazirabadi's briefs raise additional claims that he did not present to the district court. For example, he now asserts that defendants violated § 2000e-2(a)(2) by asking for his language fluencies. Similarly, Vazirabadi avers that defendants ran afoul of the Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. §§ 1607.1-1607.18. Vazirabadi's amended complaint does not assert either of these causes of action. As a result, the district court did not rule on either of these claims as separate causes of action.[7] An issue must generally be "presented to, considered and decided by the trial court before it can be raised on appeal." Tele-Commc'ns, Inc. v. Comm'r, 104 F.3d 1229, 1233 (10th Cir. 1997) (alterations and quotation omitted). We decline Vazirabadi's invitation to address these claims for the first time on appeal.

---

[7] The district court did address Vazirabadi's argument, made in connection with his ADEA and conspiracy causes of action, that SHL—which is not a party in this case—violated the law by asking whether Vazirabadi was over the age of forty. The district court pointed out that the issue of whether SHL properly asked about Vazirabadi's age is irrelevant to the claims in this case given that "there is no evidence that the information about [] Vazirabadi's age was known to or used by [Denver Health] in its hiring decision." We agree.

### III

For the reasons stated above, we **AFFIRM**.

Entered for the Court

Carlos F. Lucero
Circuit Judge