# United States Court of Appeals for the Federal Circuit

05-1494


RONALD J. WOPSOCK,
LUKE J. DUNCAN, and CASSANDRA KOCHAMP,

Plaintiffs-Appellants,

v.

MILLICENT MAXINE NATCHEES, in her individual capacity and
in her official capacity as Chairperson of the Tribal Business Committee
of the Ute Indian Tribe of the Uintah and Ouray Indian Reservation,
T. SMILEY ARROWCHIS, in his individual capacity and in his official capacity
as Vice-Chairman of the Tribal Business Committee,
O. ROLAND MCCOOK, SR., in his individual capacity and in his official capacity
as a member of the Tribal Business Committee,
RICHARD JENKS, JR., in his individual capacity and in his official capacity
as a member of the Tribal Business Committee,
JOHN P. JURRIS, and SUSAN HAMMER,

Defendants-Appellees,

and

DIRK KEMPTHORNE, Secretary of the Interior,
JAMES CASON, Associate Deputy Secretary, Department of the Interior,
ALLEN ANSPACH, in his official capacity as Acting Regional Director, Western
Regional Office, Bureau of Indian Affairs,
CHESTER D. MILLS, in his individual capacity and in his official capacity as
Superintendent, Uintah and Ouray Agency, Bureau of Indian Affairs,
and WAYNE NORDWALL, in his individual capacity,

Defendants-Appellees.



David W. Scofield, Peters Scofield Price, P.C., of Salt Lake City, Utah, argued for plaintiffs-appellants.

Charles L. Kaiser, Davis Graham & Stubbs LLP, of Denver, Colorado, argued for defendants-appellees, Millicent Maxine Natchees, et al. With him on the brief was Charles A. Breer.

John A. Bryson, Attorney, Appellate Section, Environment & Natural Resources Division, United States Department of Justice, of Washington, DC, argued for defendants-appellees, Dirk Kempthorne, Secretary of the Interior, et al. With him on the brief were Matthew J. McKeown, Deputy Assistant Attorney General, and William B. Lazarus, Attorney.

Appealed from: United States District Court for the District of Utah

Judge Ted Stewart

# United States Court of Appeals for the Federal Circuit

05-1494

RONALD J. WOPSOCK,
LUKE J. DUNCAN, and CASSANDRA KOCHAMP,

Plaintiffs-Appellants,

v.

MILLICENT MAXINE NATCHEES, in her individual capacity and
in her official capacity as Chairperson of the Tribal Business Committee
of the Ute Indian Tribe of the Uintah and Ouray Indian Reservation,
T. SMILEY ARROWCHIS, in his individual capacity and in his official capacity
as Vice-Chairman of the Tribal Business Committee,
O. ROLAND MCCOOK, SR., in his individual capacity and in his official capacity
as a member of the Tribal Business Committee,
RICHARD JENKS, JR., in his individual capacity and in his official capacity
as a member of the Tribal Business Committee,
JOHN P. JURRIS, and SUSAN HAMMER,

Defendants-Appellees,

and

DIRK KEMPTHORNE, Secretary of the Interior,
JAMES CASON, Associate Deputy Secretary, Department of the Interior,
ALLEN ANSPACH, in his official capacity as Acting Regional Director, Western
Regional Office, Bureau of Indian Affairs,
CHESTER D. MILLS, in his individual capacity and in his official capacity as
Superintendent, Uintah and Ouray Agency, Bureau of Indian Affairs,
and WAYNE NORDWALL, in his individual capacity,

Defendants-Appellees.

_____

DECIDED: July 11, 2006

_____

Before RADER, SCHALL, and BRYSON, <u>Circuit Judges</u>.

BRYSON, <u>Circuit Judge</u>.

Ronald Wopsock, Luke Duncan, and Cassandra Kochamp brought this action in the United States District Court for the District of Utah against several officials of the Ute Indian Tribe and others associated with them ("the tribal defendants"), and against several federal officials, including the Secretary of the Interior ("the federal defendants"). The district court granted the tribal defendants' motion to dismiss the complaint and the federal defendants' motion for summary judgment. The plaintiffs appealed to this court. Because we conclude that this court lacks jurisdiction over the plaintiffs' appeal, we transfer the case to the United States Court of Appeals for the Tenth Circuit.

I

This case arises from a dispute within the Ute Indian Tribe concerning membership on the Tribe's Business Committee (the Tribe's governing body) and the rules and procedures for election to the Business Committee. Mr. Wopsock and Mr. Duncan are members of the Tribe who previously served as elected members of the Business Committee. Ms. Kochamp is a member of the Tribe who initiated a petition to recall certain members of the Business Committee.

While Mr. Wopsock and Mr. Duncan were serving on the Business Committee, the Tribe entered into a financial consulting agreement with defendant John Jurrius. Concerned about Mr. Jurrius's subsequent management of the Tribe's assets, Mr. Wopsock and Mr. Duncan filed an action in the district court against the Bureau of Indian Affairs ("BIA") and several BIA officials, charging them with breach of their

05-1494 2

fiduciary obligations to the Tribe.[1] Shortly thereafter, the Business Committee passed two resolutions to expel Mr. Wopsock and Mr. Duncan from the Committee. The Business Committee then enacted Ordinance 03-002, which barred any member who had been expelled from the Business Committee from running as a candidate for election to the Committee for a period of four years. Meanwhile, Mary Carol Jenkins began circulating a petition to recall defendant Millicent Maxine Natchees, the Chairperson of the Business Committee. The Business Committee then enacted Ordinance 03-004, which imposed additional requirements on recall petitions. Ms. Jenkins's recall petition was rejected for failing to comply with the new requirements.

On October 30, 2003, local BIA Superintendent Chester D. Mills approved Ordinances 03-002 and 03-004. In letters to both Superintendent Mills and BIA Western Division Director Wayne Nordwall, the plaintiffs appealed that approval. Superintendent Mills subsequently vacated his approval, explaining that "my approval of these two ordinances was not required by law, and in fact might be seen as an intrusion on the sovereignty of the Tribe." Director Nordwall similarly concluded that "the Superintendent's approval action was not needed and had no effect on the validity or

---

[1] On September 29, 2004, the district court dismissed that action without prejudice, finding that "[n]one of the laws under which Plaintiffs seek relief provides a private right of action against the United States, its agencies or officials." Wopsock v. Nordwall, No. 2:03-CV-826 (D. Utah). The district court also concluded that the plaintiffs' claims under the Administrative Procedure Act ("APA") were not ripe. Id. In an unpublished decision, the Tenth Circuit affirmed. Wopsock v. Nordwall, No. 04-4296 (10th Cir. May 4, 2006).

invalidity of the resolution." Director Nordwall thus dismissed the plaintiffs' appeals. The plaintiffs appealed those decisions to the Interior Board of Indian Appeals ("IBIA").[2]

On August 3, 2004, the plaintiffs filed their first amended complaint, which included a total of eight counts. Count 5, of particular relevance here, alleged that the tribal defendants violated the Indian Civil Rights Act ("ICRA") by abridging the plaintiffs' rights to due process, equal protection, and freedom of speech. Count 5 also alleged that the federal defendants had breached their fiduciary duties by "fail[ing] to decline to recognize" the tribal defendants' actions, in violation of the Indian Reorganization Act ("IRA"), the ICRA, and the Administrative Procedure Act ("APA"). Under count 5, the plaintiffs sought declaratory and injunctive relief, as well as an award of money damages, pursuant to 28 U.S.C. § 1346(a)(2) ("the Little Tucker Act"), in the amount of $10,000 to each plaintiff.

Before the district court, the plaintiffs sought a temporary restraining order or a preliminary injunction that would prevent the tribal defendants from enforcing or recognizing Ordinance 03-002. The plaintiffs expressed their concern that, in the absence of the requested relief, Mr. Wopsock and Mr. Duncan would be precluded from seeking office in the Tribe's April 2005 election. The district court denied the request,

---

[2] On January 6, 2006, after the district court had entered judgment in this case, the IBIA dismissed both of the plaintiffs' appeals for lack of standing. The IBIA explained that "Appellants' injury appears to have been caused solely by elected officials from Appellants' own Tribe" and that there is "no basis for Appellants' contention that the injury they claim to have suffered was caused by the Regional Director, or that by Federal law he was somehow obliged to address it." Jenkins v. W. Reg'l Dir., 42 IBIA 106, 114 (2006). The IBIA further concluded that "when the Regional Director dismissed Appellants' appeal below, in response to a specific request from the Tribe that he do so on the basis of mootness, his dismissal was correct and for that

and the plaintiffs appealed. The Tenth Circuit concluded that it lacked jurisdiction over the plaintiffs' interlocutory appeal because 28 U.S.C. § 1295 "provides the Federal Circuit with exclusive jurisdiction in appeals from final decisions if the district court's jurisdiction 'was based, in whole or in part, on 28 U.S.C. section 1346.'" Wopsock v. Natchees, No. 05-4033 (10th Cir. Mar. 22, 2005) (transfer order). The Tenth Circuit therefore transferred the plaintiffs' interlocutory appeal to this court.

On April 7, 2005, this court issued an order denying the plaintiffs' motion for an injunction pending appeal. On May 17, 2005, both parties stipulated to dismissal of the plaintiffs' appeal of the district court's order, explaining that the Tribe's April 2005 election had occurred and that the plaintiffs' request for injunctive relief was therefore moot. On May 22, 2005, we granted the joint motion and dismissed the plaintiffs' interlocutory appeal. Wopsock v. Natchees, No. 05-1298 (Fed. Cir. May 25, 2005).

Thereafter, the district court dismissed all eight counts of the first amended complaint. The district court reasoned that it lacked jurisdiction over counts 1 through 7 because it "cannot reach plaintiffs' claims without first interpreting tribal law over which it lacks jurisdiction." Citing Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993), and Brown v. Reardon, 770 F.2d 896, 905-06 (10th Cir. 1985), the court also explained that it failed "to find any allegation that any harm suffered by plaintiffs was motivated by invidious, class-based animus," as is required to maintain a claim under 42 U.S.C. § 1985(3).

---

reason [the] controversy over the Superintendent's purported approval of Ordinance No. 03-002 remains moot today." Wopsock v. W. Reg'l Dir., 42 IBIA 117, 121-22 (2006).

The district court then provided additional reasons for dismissing the plaintiffs' claims. The court concluded that the plaintiffs' claims were not properly within the scope of the IRA because that statute is "not triggered by the mere fact a tribal election is being held or a purported change in the tribal constitution is alleged by individual tribal members." Rather, the court held, the IRA is only triggered "by an appropriate request by a tribe for federal involvement." The court further noted that the IRA does not impose upon the federal defendants the affirmative duties asserted by the plaintiffs. The district court observed that the plaintiffs "point to no aspect of tribal or federal law that requires the federal government to act but rather attempt to extend the law to create such duties."

The district court also noted that neither the tribal defendants nor the federal defendants had waived their sovereign immunity. Furthermore, the court observed that the plaintiffs had failed to exhaust both their federal remedies and their tribal remedies. The court explained that the plaintiffs' administrative claims were still pending before the IBIA and that the plaintiffs had failed to appeal their challenge against Ordinance 03-002 to the tribal appellate court and had never challenged Ordinance 03-004 in any tribal court. In those circumstances, the court ruled, dismissal was appropriate.

Finally, the district court addressed the plaintiffs' motion for leave to amend. The court explained that "[v]irtually contemporaneously with this Court's hearing on the motions to dismiss and for summary judgment, plaintiffs moved . . . to file a second amended complaint." The court found that the "facts and claims sought to be asserted . . . were known to plaintiffs when they filed their earlier complaints" and that "[p]laintiffs' amendments appear to be an attempt to avoid both this Court's prior rulings and

arguments raised by defendants."  The court therefore denied leave to amend the complaint.

II

This court has "exclusive jurisdiction . . . of an appeal from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part, on [28 U.S.C.] section 1346."  28 U.S.C. § 1295(a).  As a result, "the question whether we have jurisdiction in this case . . . depends on whether the jurisdiction of the district court in this case was based, at least in part, on the Little Tucker Act."  Doe v. United States, 372 F.3d 1308, 1311-12 (Fed. Cir. 2004) (citing United States v. Hohri, 482 U.S. 64, 72 (1987)).

In the Tucker Act, 28 U.S.C. § 1491, and the Little Tucker Act, 28 U.S.C. § 1346(a)(2), Congress waived sovereign immunity for certain actions for monetary relief against the United States.  Doe, 372 F.3d at 1312.  Yet, as the Supreme Court has noted, the Tucker Act "does not create any substantive right enforceable against the United States for money damages.'"  United States v. Mitchell, 445 U.S. 535, 538 (1980) ("Mitchell I").  Consequently, a court must consider "whether the source of substantive law can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained."  United States v. Mitchell, 463 U.S. 206, 216 (1983) ("Mitchell II"); see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003) (discussing Mitchell II's "fair interpretation rule" and stating that "[i]t is enough . . . that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages" and that "a fair inference will do"); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005).

Moreover, the question whether a statute can fairly be interpreted as money-mandating is one that directly bears on the issue of jurisdiction. In Fisher v. United States, 402 F.3d 1167, 1171-72 (Fed. Cir. 2005) (en banc), we held that a court "should entertain and decide the jurisdictional and merits test in . . . [a] single step . . . in which the trial court determines both the question of whether the statute provides the predicate for its jurisdiction, and lays to rest . . . the question of whether the statute on its merits provides a money-mandating remedy."[3] In other words, because a court is always responsible for its own jurisdiction, a court that entertains a complaint alleging a Tucker Act claim must determine at the outset whether the statute relied upon is one that is money-mandating. Id. at 1173. In the event that the court concludes that the source of substantive law does not meet the "money-mandating test," the court must dismiss the claim for lack of jurisdiction because "the absence of a money-mandating source [is] fatal to the court's jurisdiction under the Tucker Act." Id.

In United States v. Navajo Nation, 537 U.S. 488, 503 (2003), the Supreme Court addressed the "money-mandating test" by comparing Mitchell I, in which the Court concluded that the statute at issue (the Indian General Allotment Act) was not money-mandating, to Mitchell II, in which the Court found that the relevant timber management statutes could be interpreted as money-mandating. In doing so, the Court focused on the degree to which the statutes in each case created a trust relationship between the

---

[3]     In Fisher, we overruled Gollehon Farming v. United States, 207 F.3d 1373 (Fed. Cir. 2000), which had prescribed a two-step approach to the money-mandating issue: (1) the plaintiff need only make a non-frivolous allegation that the statute may be interpreted as money-mandating to satisfy jurisdiction and (2) if it was subsequently decided that the statute was not money-mandating, the court would dismiss for failure to state a claim upon which relief could be granted. See Fisher, 402 F.3d at 1172-73.

United States and the respondents.  The Court observed that the statute in <u>Mitchell I</u> "created only a limited trust relationship . . . that does not impose any duty upon the Government to manage timber resources," while the statute in <u>Mitchell II</u>, "clearly give[s] the Federal Government full responsibility to manage Indian resources and land for the benefit of the Indians."  <u>Navajo Nation</u>, 537 U.S. at 504-05.  The Court thus explained that, for purposes of determining whether a particular claim falls within the Tucker Act, "<u>Mitchell I</u> and <u>Mitchell II</u> . . . instruct [that] a Tribe must identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties."  <u>Id.</u> at 506.  The Court then addressed the statute at issue in <u>Navajo Nation</u> (the Indian Mineral Leasing Act ("IMLA")) and found that the IMLA "simply requires Secretarial approval" and that "[u]nlike the 'elaborate' provisions before the Court in <u>Mitchell II</u>," the "Secretary is neither assigned a comprehensive managerial role nor . . . expressly invested with responsibility to secure the needs and best interests of the Indian owner and his heirs."  <u>Id.</u> at 507-08 (internal quotation marks omitted).  The Court therefore concluded that "no provision of the IMLA or its regulations contains <u>any</u> trust language with respect to coal leasing" and rejected the respondent's claim for compensation.  <u>Id.</u> at 508.  <u>Compare</u> <u>Navajo Nation</u>, 537 U.S. at 508, <u>with</u> <u>White Mountain Apache Tribe</u>, 537 U.S. at 475 (finding the statute in question to be money-mandating because it provides that "Fort Apache [is] 'held by the United States in trust for the White Mountain Apache Tribe'" and because "elementary trust law . . . confirms the commonsense assumption that a fiduciary actually administering trust property may not allow it to fall into ruin on his watch").

The plaintiffs in this case seek money damages pursuant to the Little Tucker Act as compensation for the federal defendants' alleged breach of the fiduciary duties created by the IRA, the ICRA and the APA. The IRA, however, cannot fairly be interpreted as mandating compensation by the federal government for the injury claimed by the plaintiffs. Like the statute at issue in Navajo Nation, the IRA does not grant the Secretary a "comprehensive managerial role"; rather, it simply requires the Secretary to "call and hold an election . . . after the receipt of a tribal request." See 25 U.S.C. § 476(c). In this manner, the IRA invests primary responsibility with the Tribe, not the Secretary. In fact, the Supreme Court has stated that "[t]he overriding purpose of [the IRA] was to establish machinery whereby Indian tribes would be able to assume a greater degree of self-government, both politically and economically." Morton v. Mancari, 417 U.S. 535, 542 (1974). Moreover, as the Tenth Circuit has explained in distinguishing Mitchell II: "Indian tribes have a right to self-government . . . [and] . . . while the Department may be required by statute or tribal law to act in intratribal matters, it should act so as to avoid any unnecessary interference with a tribe's right to self-government." Wheeler v. U. S. Dep't of the Interior, Bureau of Indian Affairs, 811 F.2d 549, 553 (10th Cir. 1987); see also Nero v. Cherokee Nation of Okla., 892 F.2d 1457, 1465 (1989) (distinguishing Mitchell II by finding that "no statute or regulation requires Department involvement in Cherokee election disputes; rather, . . . federal law precludes Department action"). Consequently, the IRA does not serve as the requisite money-mandating statute needed to establish jurisdiction under the Little Tucker Act.

The ICRA and the APA do not fulfill that role either. The ICRA is directed not at the federal government, but rather at Indian tribes. See 25 U.S.C. § 1302 ("No Indian

tribe in exercising powers of self-government shall . . . .").  Thus it does not impose duties upon the federal government or its officials.  Finally, the APA does not authorize an award of money damages at all; to the contrary, section 10(a) of the APA, 5 U.S.C. § 702, specifically limits the Act to actions "seeking relief other than money damages."

Under Fisher, without a source of substantive law that can fairly be interpreted as mandating compensation, the Little Tucker Act did not give the district court jurisdiction to consider the plaintiffs' claim for money damages.  Because the district court's jurisdiction over this case was not based in part on the Little Tucker Act, we lack jurisdiction over this appeal.  See Doe, 372 F.3d at 1317 (finding that the Federal Circuit lacked appellate jurisdiction because the "case was not one that was based on the Little Tucker Act at the outset, and it never became one through the passage of time or the unfolding of events"); see also 28 U.S.C. § 1295(a)(2).

When we lack jurisdiction, we are "authorized by statute to transfer the case to 'any other court in which the action or appeal could have been brought at the time it was filed or noticed.'"  Doe, 372 F.3d at 1317 (quoting 28 U.S.C. § 1631).  To be sure, in a previous appeal, the Tenth Circuit transferred this case to us.  In such situations, the Supreme Court has advised us that law-of-the-case principles should be applied so as to avoid "a perpetual game of jurisdictional ping-pong."  Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818 (1988).  It is well established, however, that law-of-the-case principles do not bar a court from departing from earlier rulings when there is "an intervening change of controlling legal authority, or [a showing that] the prior decision is clearly incorrect and its preservation would work a manifest injustice."  Toro Co. v. White Consol. Indus., 383 F.3d 1326, 1336 (Fed. Cir. 2004); see also 18B

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 4478 (2d ed. 2002). In this case, the Tenth Circuit's earlier transfer of the plaintiffs' interlocutory appeal occurred almost simultaneously with our en banc decision in <u>Fisher</u>, in which we overruled prior precedent under which the Tenth Circuit's transfer decision would have been correct. Thus, this is a case in which there has been a change in the law and in which it is now quite clear that we lack jurisdiction over this appeal. We therefore consider it to be in the interest of justice to transfer the present appeal to the appropriate appellate tribunal for further proceedings. Because this case was appealed from a final judgment of the United States District Court for the District of Utah, we direct that the appeal be transferred to the United States Court of Appeals for the Tenth Circuit.

Each party shall bear its own costs for this appeal.

<u>TRANSFERRED</u>.