**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 23, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RONALD J. WOPSOCK, LUKE J. DUNCAN, CASSANDRA KOCHAMP,

      Plaintiffs - Appellants,

      v.

MILLICENT MAXINE NATCHEES, in her individual capacity and in her official capacity as Chairperson of the Tribal Business Committee of the Ute Indian Tribe of the Uintah and Ouray Indian Reservation; T. SMILEY ARROWCHIS, in his individual capacity and in his official capacity as Vice-Chairman of the Tribal Business Committee; O. ROLAND MCCOOK, SR., RICHARD JENKS, JR., in their individual and their official capacities as Members of the Tribal Business Committee; CARL J. ARTMAN, in his official capacity as Assistant Secretary-Indian Affairs, United States Department of the Interior; DIANE PELTIER, in her individual capacity and official capacity as the Superintendent, Uintah and Ouray Agency, Bureau of Indian Affairs; JOHN P. JURRIUS, in his individual capacity; DIRK KEMPTHORNE, Secretary of the Interior; SUSAN HAMMER, in her individual capacity; ALLEN ANSPACH, Regional Director, Western Regional Office, Bureau of Indian Affairs,

      Defendants - Appellees.

No. 06-4215

(D. Utah)

(D.C. No. 04-CV-675-TS)

---

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **HARTZ**, and **HOLMES**, Circuit Judges.

## I. Introduction

This case centers on a dispute over the membership on the Business Committee[1] of the Ute Indian Tribe of the Uintah and Ouray Reservation and the financial management of the Tribe's assets. Ronald Wopsock, Luke Duncan and Cassandra Kochamp,[2] enrolled members of the Ute Indian Tribe, filed an eight-count complaint in United States District Court for the District of Utah against various private parties and tribal and federal officials. The plaintiffs allege two ordinances passed by the Business Committee impermissibly amended the Tribe's constitution, giving rise to various federal claims. The first amended complaint alleged, *inter alia*, violations of the Indian Reorganization Act (IRA) and conspiracy to violate plaintiffs' civil rights. The district court dismissed all

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]The Business Committee is the Tribe's governing body.

[2]Kochamp was substituted for plaintiff Mary Carol Jenkins several months after the suit's inception after Jenkins requested to withdraw. The court accordingly dismissed all of Jenkins' claims without prejudice. The claims previously asserted by Jenkins were later reinstated on Kochamp's behalf.

claims and denied the plaintiffs' motion to amend their complaint. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **AFFIRMS** the judgment of the district court. We hold the plaintiffs' IRA claims are barred by sovereign immunity and the plaintiffs failed to state a claim under the civil rights conspiracy statutes. We further hold the district court did not abuse its discretion in denying the motion to amend the complaint.

## II. Background

The Ute Tribe was organized under a constitution and bylaws adopted pursuant to the IRA. The IRA, passed in 1934, gives Indian tribes the right to organize pursuant to a constitution and bylaws that become effective when ratified by the tribal members in an election authorized and called by the Secretary of the Interior (Secretary) and subsequently approved by the Secretary. 25 U.S.C. § 476(a), (1)-(2). The Secretary is required to hold an election after she receives a tribal request for an election to adopt, revoke or amend a constitution or bylaws. *Id*. § 476(a)-(c)(1). The IRA was intended to limit the control of the Bureau of Indian Affairs (BIA) over the federally recognized Indian tribes, which at that time was nearly absolute. *Morton v. Mancari*, 417 U.S. 535, 542-43 (1974). It was designed "to strengthen tribal government while continuing [an] active role for the BIA." *Id*. at 543. In 1988, the IRA was amended to require the Secretary to call a tribally requested election within a certain amount

of time.[3]  25 U.S.C. § 476(c)(1); S. Rep. 100-577, at 2 (1988), *as reprinted in*

1988 U.S.C.C.A.N. 3908, 3909.  In addition, after the passage of the 1988

amendments, the Secretary is only permitted to disapprove of a duly passed tribal

constitution or amendment if it is found in violation of applicable law.  25 U.S.C.

§ 476(d)(1); S. Rep. 100-577, at 2 (1988), *as reprinted in* 1988 U.S.C.C.A.N.

3908, 3909.

Wopsock and Duncan were members of the Business Committee when the

Tribe entered into a financial consulting agreement with defendant John Jurrius.

Wopsock and Duncan became dissatisfied with Jurrius' management of the

Tribe's assets.  Wopsock and Duncan filed an action in United States District

Court for the District of Utah against the BIA, alleging violations of statutes

governing the management of tribal assets and a general breach of trust claim for

failure to intervene and investigate the management of the Tribe's assets.[4]

---

[3]The 1988 amendments were passed in response to a case in which a tribe alleged the Secretary had withheld authorization for a tribal election until the tribe's draft constitution had been modified as suggested by the BIA.  S. Rep. 100-577, at 2 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 3908, 3909.

[4]The district court dismissed the suit for lack of subject matter jurisdiction, concluding none of the statutes pleaded by plaintiffs provided a private right of action against the United States and the plaintiffs' claims were not ripe under the Administrative Procedure Act (APA).  The district court's decision was affirmed by this court in an unpublished opinion for failure to provide documents that control the resolution of the issues on appeal in the appendix.  *Wopsock v. Nordwall*, 180 F. App'x 6, 9 (10th Cir. 2006) (unpublished).

Shortly after the initiation of the lawsuit, the Business Committee passed two resolutions expelling Wopsock and Duncan from the Committee. The Business Committee explained in the resolution effectuating the expulsions that its actions were taken in response to the lawsuit filed by the plaintiffs. After expelling Wopsock and Duncan, the Business Committee enacted Ordinance 03-002, which barred any member who had been expelled from the Business Committee from running as a candidate for the Committee for a period of four years. Later, in response to a petition to recall Business Committee Chairperson Millicent Maxine Natchees, the Committee enacted Ordinance 03-004, which imposed additional procedural requirements on recall petitions and effectively quashed the attempt to recall Natchees.

BIA Superintendent Chester Mills approved Ordinance 03-002 and Ordinance 03-004 (Ordinances) shortly after their passage. The plaintiffs filed an appeal of the approval with the Western Regional Director of the BIA, Wayne Nordwall. Before Nordwall acted, Mills received a letter from Natchees requesting he vacate his approval of the Ordinances because the Committee had concluded BIA approval was not needed. Nordwall, after considering the letter, agreed the Ordinances did not require BIA approval and Mills' approval had no effect on their validity. Furthermore, he noted that although the BIA had previously approved election ordinances, it would no longer do so. Mills then

informed the Business Committee that he was vacating his approval of the Ordinances.

Nordwall dismissed the plaintiffs' appeals of Mills' approval of the Ordinances on the grounds that the Tribe had sole authority over the Ordinances and Mills' approval had no effect. The plaintiffs appealed that dismissal to the Interior Board of Indian Appeals (IBIA). Before the IBIA reached a conclusion, the plaintiffs filed the instant suit in United States District Court for the District of Utah.[5] The suit named as defendants the members of the Business Committee who participated in the expulsion, including Chairperson Natchees (tribal defendants); Jurrius and Susan Hammer[6] (private defendants); and various Department of Interior officials, including the Secretary, Mills and Nordwall (federal defendants).

The plaintiffs brought eight counts in their first amended complaint. Counts 1 and 2 alleged the tribal defendants violated the IRA in passing the Ordinances. 25 U.S.C. § 476. Counts 3 and 4 alleged Mills and Nordwall violated the IRA by failing to disapprove the Ordinances. Count 5 alleged breach

---

[5]After the district court entered judgment in this case, the Interior Board of Indian Affairs (IBIA) dismissed the plaintiffs' appeals. The IBIA concluded Nordwall's withdrawal of Bureau of Indian Affairs (BIA) approval of the Ordinances rendered the appeal moot. *Wopsock v. W. Reg'l Dir.*, 42 I.B.I.A. 117, 121 (2006) (Ordinance No. 03-002); *Jenkins v. W. Reg'l Dir.*, 42 I.B.I.A. 106, 111 (2006) (Ordinance No. 03-004).

[6]Hammer was Jurrius' business associate.

of fiduciary duty by the federal defendants for continuing to carry on government-to-government relations with the Business Committee and a violation of the Indian Civil Rights Act. Count 6 alleged a breach of fiduciary duty by Mills and Nordwall for a conflict of interest. Count 7 alleged a *Bivens* action against Mills and Nordwall. Count 8 alleged a violation of 42 U.S.C. § 1985(3), which provides a cause of action against individuals who conspire to violate a person's civil rights, against Mills, Nordwall, Jurrius, Hammer and the tribal defendants. The plaintiffs sought a variety of declaratory, monetary and injunctive relief.

In the district court, the plaintiffs sought a temporary restraining order or a preliminary injunction to prevent the tribal defendants from enforcing Ordinance 03-002 and to permit Wopsock and Duncan to run for Business Committee seats in the upcoming election. The district court denied the request and the plaintiffs appealed to this court. In an unpublished order, this court held that we lacked jurisdiction over the appeal and transferred the appeal to the Federal Circuit because 28 U.S.C. § 1295 provides the Federal Circuit with exclusive jurisdiction over appeals where, as here, the district court's jurisdiction was based in whole or in part on the Little Tucker Act, 28 U.S.C. § 1346. *Wopsock v. Natchees*, No. 05-4033 (10th Cir. Mar. 25, 2005) (transfer order). The Federal Circuit denied the plaintiffs' motion for an injunction pending appeal. The tribal election was held before the Federal Circuit ruled on the merits and the appeal was dismissed as moot. *Wopsock v. Natchees*, 454 F.3d 1327, 1330 (Fed. Cir. 2006).

The defendants then filed motions to dismiss and a motion for summary judgment in the district court. The day before the district court's planned hearing on the merits of the motions, and after the completion of briefing by all parties, the plaintiffs filed a motion to amend their first amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). The proposed second amended complaint would include allegations showing tribal remedies were exhausted, allegations of class-based animus, a new cause of action under 42 U.S.C. § 1985(2) alleging conspiracy to retaliate against plaintiffs for filing a federal lawsuit, and a new cause of action under 42 U.S.C. § 1986 for failing to exercise authority to prevent a § 1985 conspiracy. At the motions hearing the district court granted the defendants' motions to dismiss and motion for summary judgment, but delayed ruling on the motion to amend until after the issue had been fully briefed. The defendants filed briefs in opposition to the motion to amend. In their reply brief, the plaintiffs proposed a significantly modified second amended complaint that responded to problems raised by the district court at the hearing. The new complaint would, in addition to the changes in the proposed second amended complaint, dismiss all tribal defendants and would not plead a violation of § 1985(3).

The district court entered a memorandum and order granting the defendants' motions to dismiss and motion for summary judgment and denying the plaintiffs' motion for leave to amend. The district court concluded that the

case presented an intra-tribal dispute and, with the exception of Count 8, it did not have subject matter jurisdiction over the claims. The district court also found that plaintiffs did not allege class-based animus as required by § 1985(3) and therefore dismissed Count 8 in its entirety. The court went on to note that Counts 1, 2, and 8 should be dismissed on the basis of tribal sovereign immunity. It also determined the IRA is not triggered absent a tribal request. In dismissing the motion to amend, the district court concluded it was untimely and appeared to be an attempt to avoid the court's prior rulings and arguments raised by the defendants.

The plaintiffs appealed the district court's decision to the Federal Circuit. The Federal Circuit examined its jurisdiction over the appeal. *Wopsock*, 454 F.3d at 1331. In so doing, it noted that it has jurisdiction over appeals when the district court's jurisdiction is based, at least in part, on the Little Tucker Act. *Id.* The Little Tucker Act, 28 U.S.C. § 1491, waives sovereign immunity for certain actions for monetary relief against the United States, but does not itself create a substantive right. *Wopsock*, 454 F.3d at 1331. Therefore, for the Little Tucker Act to apply, and Federal Circuit jurisdiction to attach, a court must determine whether the substantive law can be fairly interpreted as mandating compensation by the Federal Government. *Id.*

The Federal Circuit determined that none of the statutes pleaded by the plaintiffs mandated compensation by the federal government for the claimed

injuries. *Wopsock*, 454 F.3d at 1332-33. In particular, it held the IRA does not grant the Secretary a comprehensive managerial role, but only requires her to call and hold an election after receipt of a tribal request. *Id*. at 1332. Thus, the Federal Circuit determined that no money-mandating statute was pleaded by the plaintiffs and directed the appeal be transferred to this court. *Id*. at 1333-34.

**III. Discussion**

The plaintiffs challenge the dismissal of Counts 1, 2, 3, 4 and 8. At oral argument the plaintiffs' counsel acknowledged they were not pursuing Counts 5 and 6 in this appeal. Counsel further conceded that Count 7, the *Bivens* claim, was not viable in light of the Supreme Court's recent decision in *Wilkie v. Robbins*, 127 S. Ct. 2588 (2007). The plaintiffs also appeal the district court's denial of the motion to amend the complaint.

*A.       Claims against the tribal defendants under the IRA (Counts 1 and 2)*

The tribal defendants claim Counts 1 and 2 must be dismissed for lack of jurisdiction over the tribal defendants in their official capacity. "Due to their sovereign status, suits against tribes or tribal officials in their official capacity are barred in the absence of an unequivocally expressed waiver by the tribe or abrogation by Congress." *Dry v. United States*, 235 F.3d 1249, 1253 (10th Cir. 2000) (quotation omitted). Congressional waivers of tribal sovereign immunity must be unequivocally expressed. *Osage Tribal Council ex rel. Osage Tribe of*

*Indians v. United States Dept. of Labor*, 187 F.3d 1174, 1181 (10th Cir. 1999).

"We review de novo the legal question of when a party can assert sovereign immunity." *Sac and Fox Nation v. Hanson*, 47 F.3d 1061, 1063 (10th Cir. 1995).

Here, the plaintiffs have not argued that the tribal defendants waived their sovereign immunity. Neither do they point to language in the IRA abrogating a tribe's immunity from suit. The plaintiffs instead contend their suit is not barred by tribal sovereign immunity because Counts 1 and 2 were brought against the individual tribal officials and tribal officials are not protected by sovereign immunity when acting outside the scope of the authority bestowed on them by the tribe. *See Tenneco Oil Co. v. Sac and Fox Tribe of Indians*, 725 F.2d 572, 574 (10th Cir. 1984) (per curiam).

This court, however, has held that where "the relief requested by [i]ndividual [p]laintiffs, concerning rights to vote in future tribal elections and hold tribal office, if granted, would run against the Tribe itself, the Tribe's sovereign immunity protects these defendants in their official capacities." *Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir. 1997). In *Fletcher*, the plaintiffs brought suit in federal district court alleging that restrictions on the right to vote in tribal elections violated the Due Process Clause of the Fifth Amendment and Title II of the Civil Rights Act of 1968. *Id.* at 1320. Although the Tribe itself was not a named party to the suit, the plaintiffs did name various tribal officials in their official capacities and sought declaratory relief. This court

-11-

held that because the relief sought, if granted, would run against the Tribe itself, the "[t]ribal [d]efendants were entitled to sovereign immunity as far as the official capacity claims, unless there is an unequivocally expressed waiver either by the Tribe or abrogation by Congress." *Id.* at 1324.

"Indian tribes are distinct, independent political communities, retaining their original natural rights in matters of local self-government. Although no longer possessed of the full attributes of sovereignty, they remain a separate people, with the power of regulating their internal and social relations." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55 (1978) (quotations and citations omitted). Here, despite naming the tribal defendants in their official capacity, the plaintiffs ask for relief that would run against the Tribe itself. *See Fletcher*, 116 F.3d at 1324. They request a permanent injunction prohibiting the tribal defendants from recognizing the results of the tribal election from which Wopsock and Duncan were excluded and prohibiting future elections that would take place under the ordinances. They also request an order directing the tribal defendants to accept the recall petition of Natchees and prohibiting the tribal defendants from relying on Ordinance 03-004. The relief sought by the plaintiffs would, if granted, impact the right to hold tribal office and the governing of the Tribe itself. Accordingly, the tribal defendants are entitled to sovereign immunity for the claims against them in their official capacities and we affirm the dismissal of Counts 1 and 2 for lack of jurisdiction.

*B.* *Claims against the federal defendants under the IRA (Counts 3 and 4)*

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Nero v. Cherokee Nation of Okla.*, 892 F.2d 1457, 1463 (10th Cir. 1989) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)) (alterations omitted). Such consent "cannot be implied but must be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quotation omitted). It is the terms of the United States' consent that define this court's jurisdiction to entertain any suit. *Id.* The federal defendants argue the district court's dismissal of Counts 3 and 4, brought against them in their official capacity, must be affirmed for lack of jurisdiction because neither the IRA's nor the Administrative Procedure Act's (APA) waivers of sovereign immunity apply here.

Subsection (d) of the IRA places affirmative duties on the Secretary to approve or disapprove tribal constitutions or amendments and contains a waiver of sovereign immunity. 25 U.S.C. § 476(d). The federal defendants, however, contend that this waiver is not triggered absent a tribal request for a Secretarial election. Because a request did not occur here, the federal defendants argue, the IRA's waiver of sovereign immunity cannot apply.

The IRA provides a mechanism for Indian tribes to adopt or revoke constitutions, bylaws or amendments. 25 U.S.C. § 476(a)-(b). These provisions are adopted by a tribe through a tribal election held under the auspices of

-13-

subsection (a), which requires a special election authorized and called by the Secretary. Subsection (c) provides the only requirements under which the Secretary must call an election, thereby triggering subsection (a):

> (1) The Secretary shall call and hold an election as required by subsection (a) of this section—
>
> (A) within one hundred and eighty days *after the receipt of a tribal request* for an election to ratify a proposed constitution and bylaws, or to revoke such constitution and bylaws; or
>
> (B) within ninety days *after receipt of a tribal request* for election to ratify an amendment to the constitution and bylaws.

25 U.S.C. § 476(c)(1) (emphasis added). It is undisputed that the Ute Tribe did not submit a tribal request that would meet the requirements of subsection (c) and therefore the Secretary was not obligated to call a subsection (a) election.

Subsection (d) requires the Secretary to approve or disapprove the constitution, bylaws, or amendments adopted by a tribe under subsection (a). 25 U.S.C. § 476(d)(1) ("If an election called under subsection (a) of this section results in the adoption by the tribe of the proposed constitution and bylaws or amendments thereto, the Secretary shall approve the constitution and bylaws or amendments thereto within forty-five days after the election. . . ."). The provisions of subsection (d) placing an affirmative duty on the Secretary, however, are only triggered after a tribal request and the holding of a Secretarial election pursuant to § 476(a). *See Shakopee Mdewakanton Sioux (Dakota)*

*Community v. Babbitt*, 906 F. Supp. 513, 522 (D. Minn. 1995) ("[T]he provisions of § 476(d) do not apply until an election satisfies the conditions of § 476(a)(1)."). Because there was no tribal request or subsection (a) election held here, the provisions of subsection (d) do not apply and the Secretary had no duty to act.[7] *See Wopsock*, 454 F.3d at 1332 ("[T]he IRA does not grant the Secretary a comprehensive managerial role; rather, it simply requires the Secretary to call and hold an election after the receipt of a tribal request." (quotations and alteration omitted)). As a result, the waiver of sovereign immunity provided for in the IRA to enforce the provisions of the act does not apply to the claims presented here.

This result is consistent with the purpose of the IRA. "The overriding purpose of [the IRA] was to establish machinery whereby Indian tribes would be able to assume a greater degree of self-government." *Mancari*, 417 U.S. at 542. In particular, in enacting the IRA "Congress was seeking to modify the then-existing situation whereby the primarily non-Indian-staffed BIA had plenary control, for all practical purposes, over the lives and destinies of the federally recognized Indian tribes." *Id*. The legislative history of 1988 amendments to the

---

[7]This result comports with the available case law. The plaintiffs point to only one case where a court proceeded to the merits of an IRA claim absent a tribal request for a Secretarial election. *Williamson-Edwards v. Babbitt*, 1998 U.S. Dist. Lexis 9241 (W.D. Mich. 1998). That opinion, however, never considered whether a tribal request was a necessary prerequisite to the IRA's applicability and we decline to follow its lead.

Act further support the conclusion that the IRA was passed to further tribal sovereignty and not to serve as a mechanism for BIA control over tribal affairs. S. Rep. 100-577 (1988), at 2 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 3908, 3909 (explaining the amendments limited the Secretary's discretion in disapproving tribally approved amendments). We therefore hold the IRA's waiver of sovereign immunity does not apply absent a tribal request for a Secretarial election.

Neither does the APA provide a waiver of sovereign immunity in this case. The agency's actions cannot meet the requirements for the APA's definition of "agency action unlawfully withheld." 5 U.S.C. § 706(1). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). The IRA does not require the Secretary to act absent a tribal request. As a result, the federal government has not consented to this suit and we must dismiss Counts 3 and 4 for lack of jurisdiction.

C.    *Claim against Mills, Nordwall, Jurrius, Hammer and the tribal defendants for conspiracy to violate the plaintiffs' civil rights (Count 8)*

The plaintiffs' eighth cause of action alleged a conspiracy to violate their civil rights in violation of 42 U.S.C. § 1985(3). The district court dismissed the claim because the Plaintiffs had failed to allege the defendants were motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory

-16-

animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) ("[T]he other 'class-based animus' language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias.").

On appeal, the plaintiffs do not pursue their § 1985(3) claim.[8] Rather, the plaintiffs contend that even though their complaint did not expressly reference 42 U.S.C. § 1985(2) or 42 U.S.C. § 1986, the facts alleged in the complaint were sufficient to state a claim under both provisions. Section 1985(2) provides a damages remedy for conspiracies to retaliate against an individual for attending or testifying in a federal court proceeding. Section 1986 provides a damages remedy against any person with knowledge of a § 1985 conspiracy who fails to take action to prevent the harm.

The defendants argue the plaintiffs are barred from raising this argument before this court because it was not raised before the district court as a reason the defendants' Rule 12(b)(6) motion should be denied. The plaintiffs respond that their citation to § 1985(2), in their response to the federal defendants' motion to

---

[8]In a footnote, the plaintiffs briefly state they have shown class-based animus sufficient to meet the 42 U.S.C. § 1985(3) pleading requirements. They acknowledge, however, that their pleading does not meet the extremely high bar this court has set for pleading non-racially based animus under § 1985(3). *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Because the plaintiffs do not fully address the issue on appeal, but rather purport to preserve the issue for review in the Supreme Court, this court need not consider the issue. *United States v. Karam*, 496 F.3d 1157, 1162 n.2 (10th Cir. 2007).

dismiss, provided adequate notice to the district court and to the defendants of their claim under that statute. We disagree. In a footnote of their brief before the district court, the plaintiffs explain that the firing of Wopsock and Duncan was a result of their involvement in the 2003 suit and that Kochamp appeared to have been dismissed as a result of her involvement in this action. They state that these actions suggest a § 1985(2) conspiracy. The plaintiffs go on to mention, however, that "in the event the Court denies the Motions on file herein, the First Amended Complaint will be amended to allege a 42 U.S.C. § 1985(2) violation." This footnote cannot be said to constitute an argument that the first amended complaint pled a claim under § 1985(2). To the contrary, it suggests that the plaintiffs believed the first amended complaint needed to be amended in order to allege a violation of § 1985(2).[9] The footnote, therefore, could not have provided notice to the district court that it should have considered this argument when ruling on the motion to dismiss and we conclude this argument was raised for the first time on appeal. Further, the plaintiffs provide no citation to the record where they raised, before the district court, the argument that the complaint stated a claim under § 1986. Neither did our review of the record demonstrate that such an argument was raised before this appeal.

---

[9]The plaintiffs filed a motion to amend their complaint to allege 42 U.S.C. § 1985(2) and 42 U.S.C. § 1986 claims the day before the hearing on the motions to dismiss and motion for summary judgment. This further demonstrates that the district court would not have been on notice that the defendants believed their first amended complaint could be read to assert a claim under those statutes.

"We have repeatedly held that absent extraordinary circumstances, we do not consider arguments raised for the first time on appeal." *Hill v. Kan. Gas Serv. Co.*, 323 F.3d 858, 866 (10th Cir. 2003) (quotation omitted). No extraordinary circumstances are present here and we therefore refuse to consider this argument. The district court's dismissal of Count 8 is therefore affirmed.

*D. Motion to Amend*

The plaintiffs appeal the district court's denial of their Rule 15(a)(2) motion to amend their complaint. Fed. R. Civ. P. 15(a)(2).[10] The plaintiffs' complaint was filed on July 22, 2004. The first amended complaint was filed on August 3, 2004. The motion to amend the complaint a second time was filed on April 4, 2005, approximately eight months after the first two complaints were filed. The plaintiffs proposed a modified second amended complaint in their April 29, 2005, reply brief in support of their motion to amend. In reaching its decision, the district court determined that the facts supporting the amended claims were known to the plaintiffs at the time they filed their earlier complaints, the amended complaints were an attempt to avoid the court's prior rulings and the arguments raised by the defendants, and the plaintiffs had provided no explanation regarding the delay in moving to amend. As a result, the district court found the plaintiffs' motion was untimely and denied the motion to amend.

---

[10]The district court's permission was required for the plaintiffs to amend their complaint under Rule 15(a)(2) because they had previously amended the complaint as a matter of course pursuant to Rule 15(a)(1).

When a party moves to amend its pleading, Rule 15 instructs that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This court reviews a district court's denial of a motion to amend the complaint for an abuse of discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). Untimeliness alone constitutes a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay. *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994). It is not necessary to show prejudice to the opposing party. *First City Bank v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1133 (10th Cir. 1987). Furthermore,

> [c]ourts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, to present theories seriatim in an effort to avoid dismissal, or to knowingly delay raising an issue until the eve of trial.

*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (alterations, quotations and citations omitted).

The district court did not abuse its discretion in denying the motion to amend. The plaintiffs waited eight months after filing their first amended complaint before seeking permission to amend a second time. They responded to the defendants' motions for dismissal and summary judgment on the merits and did not file their motion to amend until approximately four months after the defendants' motions were filed and after the defendants' reply briefs were filed.

-20-

The plaintiffs have never provided an explanation for this delay. In addition, the plaintiffs attached a modified second proposed amended complaint to their reply brief in support of their motion to amend. That new proposed complaint sought to address the problems raised by the district court when it granted the plaintiffs' motions to dismiss and motion for summary judgment. It came after the defendants' had raised objections to the proposed second amended complaint in their briefing in opposition to the motion to amend.

Given such actions by the plaintiffs, the district court did not abuse its discretion in concluding that the plaintiffs were using Rule 15 inappropriately to respond to arguments raised by the court and the defendants. *See Pallottino*, 31 F.3d at 1027 ("Much of the value of summary judgment procedure in the cases for which it is appropriate would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back along thereafter and fight on the basis of some other theory." (alteration omitted)). We therefore affirm the district court's denial of the plaintiffs' motion to amend.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is

**AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge