Citation Nr: AXXXXXXXX
Decision Date: 05/28/21 Archive Date: 05/28/21

DOCKET NO. 200318-72358
DATE: May 28, 2021

ORDER

Service connection for an acquired psychiatric disorder, to include paranoid schizophrenia is denied.

FINDING OF FACT

The weight of the evidence is against a finding that any current acquired psychiatric disorder manifested during, or as a result of, the Veteran's active duty service.

CONCLUSION OF LAW

The criteria for service connection for an acquired psychiatric disorder, to include paranoid schizophrenia are not met. 38 U.S.C. § 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty with the United States Air Force from March 1987 to June 1991. 

In December 2019, the Veteran submitted a VA Form 20-0995, Decision Review Request: Supplemental Claim, and requested review of a February 2019 rating decision based on new and relevant evidence. In January 2020, the agency of original jurisdiction (AOJ) issued the supplemental claim decision on appeal, which found that new and relevant evidence had not been received but nevertheless adjudicated the merits of the claim of service connection for a psychiatric disorder. The Veteran's VA Form 10182, Decision Review Request: Board Appeal was received in March 2020. The Veteran elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal, January 13, 2020. 38 C.F.R. § 20.301.

As the January 2020 rating decision readjudicated the Veteran's previously denied claim, the Board is bound by this favorable finding and will proceed to the merits of the appeal. 38 C.F.R. § 3.104.

By way of history, this claim originated in the legacy system. In an April 2014 decision, the Board found that new and material evidence had not been received to warrant reopening of a previously denied claim. The Veteran testified at a Board hearing before a (now retired) Veterans Law Judge (VLJ) in conjunction with that appeal. The Veteran submitted a claim to reopen in July 2015. The RO denied the Veteran's claim in a June 2018 rating decision based on a finding that no new and material evidence was received sufficient to reopen the claim. The Veteran's notice of disagreement (NOD) was received in July 2018. Then, the Veteran elected to participate in the Rapid Appeals Modernization Pilot program (RAMP) and he selected the Supplemental Claim lane in December 2018. The opt-in to RAMP effectively withdrew his legacy appeal. In January and February 2019, the RO continued the denial of the claim.

The Veteran's claim is liberally construed, and as such, has been recharacterized to include all diagnosed psychiatric disorders. Clemons v. Shinseki, 23 Vet. App. 1 (2009) (when a claimant makes a claim, he is seeking service connection for symptoms regardless of how those symptoms are diagnosed or labeled).

Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). "To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"- the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

The requirements for establishing a diagnosis of PTSD are codified in 38 C.F.R. § 3.304(f) and differ from those for establishing service connection generally. Service connection for PTSD requires medical evidence establishing a diagnosis of the disorder, credible supporting evidence that the claimed in-service stressor(s) occurred, and a link, established by medical evidence, between current symptomatology and the claimed in-service stressor(s). 38 C.F.R. § 3.304.

A diagnosis of PTSD must be established in accordance with 38 C.F.R. § 4.125(a), which mandates that, for VA purposes, all mental disorder diagnoses must conform to the American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders (DSM).

Service connection for certain chronic diseases may also be established based upon a legal "presumption" by showing that the disease manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C. §§ 1112, 1137; 38 C.F.R. §§ 3.307, 3.309.

Secondary service connection may be granted for a disability that is proximately due to, or aggravated by, a service-connected condition. 38 C.F.R. § 3.310.

Entitlement to service connection for an acquired psychiatric disorder, to include paranoid schizophrenia.

The Veteran contends that his acquired psychiatric disorder, to include paranoid schizophrenia is related to active service. Specifically, the Veteran has most consistently claimed that his paranoid schizophrenia is due to his current hypertriglyceridemia and the high level of triglycerides noted on his separation examination. See, e.g. July 2011 Hearing Transcript. The Veteran has also claimed that his psychiatric disorder is related to stress during service and being reassigned to a different duty assignment in basic training. See, e.g. February 2006 lay statement.

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Veteran's Service Treatment Records (STRs) are silent as to any psychiatric disorder. The Veteran has stated on many occasions that, during basic training, his drill instructor sent him to see a psychiatrist during basic training. He states that he was not diagnosed with a psychiatric disorder but was nevertheless reassigned from the duty assignment he was promised by his recruiter, to supply, where he worked for the rest of his active service. See, e.g. July 2011 Hearing Transcript. The only description of the incident which provides more detail is the Veteran's February 2006 lay statement wherein he describes being confronted by a drill sergeant for failing to secure the dorm room while on guard duty. The Veteran's personnel records do confirm that the Veteran was reassigned to supply but do not mention any visits to a psychiatrist. The Veteran's DD Form 214 reflects that he received numerous commendations and medals for achievement and good conduct.

The Veteran was first diagnosed with paranoid schizophrenia in January 1997 when he was involuntarily admitted due to psychiatric symptoms and concern for his own safety. See January 1997 private mental health note. It was noted that the Veteran appeared focused on his throat dryness and believed his coworkers may be poisoning him. The psychologist noted that according to both the Veteran's family and the Veteran himself, he had no prior psychiatric history. The Veteran reported that his problems started approximately 10 days ago with throat dryness, coughing with mucous and spitting up blood. The Veteran's family reported that they have never seen him impaired like this before. Social Security Administration records similarly reveal that the Veteran reported that his disabilities, including schizophrenia, first affected him in 1997.

Medical records after 1997 show many hospitalizations and continuing treatment related to schizophrenia. See, e.g. January 2020 VA mental health note. The medical evidence of record does not reveal a diagnosis of PTSD in conformance with the DSM.

The preponderance of the evidence shows that the Veteran's schizophrenia did not have onset during service or manifest to a compensable degree within one year of separation and is not otherwise related to service, to include as secondary to a service-connected disability. In this regard, there is no evidence of in-service incurrence of paranoid schizophrenia (or any other psychiatric disability). Notably, during initial psychiatric treatment in January 1997, the Veteran and his family denied that he had any prior history of psychiatric symptoms or treatment. Moreover, the Veteran was initially diagnosed with schizophrenia in January 1997, more than 5 years following separation. Furthermore, the record does not show onset of psychiatric symptoms within one year of separation. As noted above, the Veteran reported onset of symptoms no earlier than 1997. See January 1997 private mental health note; see also July 2011 Hearing Transcript. In addition, while the Veteran contends that his schizophrenia is secondary to his hypertriglyceridemia, his hypertriglyceridemia is not currently service connected, and, as he has no other service-connected disabilities, there is no basis for a grant of secondary service connection.

Although the Veteran sincerely believes that his schizophrenia is related to an incident during service and/or hypertriglyceridemia, his belief is outweighed by the medical evidence of record. The Veteran's opinion as to nexus is not competent. The Veteran is certainly competent to report observable symptoms (such as pain, for example) and their history. Layno v. Brown, 6 Vet. App. 465 (1994); Buchanan v. Nicholson, 454 F.3d 1331 (Fed. Cir. 2006); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). In addition, lay witnesses may, in some circumstances, competently opine on questions of diagnosis and etiology (such as the onset of an observable symptom such as varicose veins, for example). See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). However, in this case, the question of the etiology of any acquired psychiatric disability is medically complex and therefore falls outside the realm of common knowledge of a lay person, particularly in light of the lengthy time period between service and the Veteran's initial psychiatric treatment. See Jandreau, 492 F.3d at 1377 n.4.

While the Veteran has not been afforded a VA examination for paranoid schizophrenia, in this case the provision of a VA examination is not necessary for the VA to have met its duty to assist. In disability compensation claims, the Secretary must provide a VA medical examination when there is: (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran's service or with another service-connected disability, but (4) insufficient competent medical evidence on file for the Secretary to make a decision on the claim. 38 U.S.C. § 5103A; McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006). In this case, the third prong of McLendon has not been met because there is no indication that the Veteran's paranoid schizophrenia may be associated with the Veteran's service and the Veteran does not have a service-connected disability.

(Continued on the next page)

 

In conclusion, the preponderance of the evidence shows that the Veteran's schizophrenia did not have onset during service or within one year of separation and is not otherwise related to service. As the preponderance of the evidence weighs against the claim and the benefit of the doubt doctrine is inapplicable. Accordingly, entitlement to service connection for a psychiatric disability, to include paranoid schizophrenia, is not warranted. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990); see also Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001).

 

 

L. B. CRYAN

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Modesto, Victor

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.